ZURICH INSURANCE CO., ᴇᴛ ᴀʟ. *v.* CONTINENTAL
CASUALTY CO., ᴇᴛ ᴀʟ.

[No. 297, September Term, 1964.]

*Decided July 13, 1965.*

The cause was argued before Prescott, C. J., and Horney, Sybert, Oppenheimer and Barnes, JJ.

Submitted on brief by *John J. Mitchell* and *Donahue, Ehrmantraut & Mitchell,* for appellants.

*Charles E. Channing, Jr.,* for appellees.

Prescott, C. J., delivered the opinion of the Court.

This appeal presents a controversy between two automobile liability insurance carriers: Zurich Insurance Company (Zurich), and Continental Casualty Company (Continental).

Brockway Motor Trucks (Brockway), apparently a corporation, in 1958, operated a used-truck sales business in Baltimore City. On, or about, August 12th of that year, a Mr. Kaumjian (according to appellees' brief; Kumjeon according to appellants'), a representative of Delta Chemical Company (Delta), entered into negotiations with Brockway concerning the possible purchase of one of its used trucks. Kaumjian selected a truck as probably being suitable for his purposes, and two or three days later called Mr. Barry, Branch Manager of Brock-

way, and advised him he would like to try out the truck.[1] Barry testified that he advised Kaumjian that his company did not ordinarily permit demonstration of used vehicles, but, if Kaumjian, *inter alia,* would have the truck adequately covered with insurance and return it the next day, he could use the truck for one trip to Wilmington, Delaware. According to Barry, Kaumjian assured him that Delta has a Fleet Policy and Kaumjian would include the truck in that policy by way of binder "while it was on loan" (this was not done).

A representative of Delta "picked up" the truck on, or about, August 13th, after signing an application for temporary license tags.

The truck was not returned the next day, and, after Kaumjian was contacted and gave an excuse for not having returned it, he was informed that he could keep it for one more day. The truck was not returned on the following day, and, when Kaumjian was reached again, he stated that he was satisfied with the truck with the exception of a few minor repairs. No demand was made at this time for the truck's return, and it was not returned, nor was any down payment made on the "order" (the pertinent terms of which will soon be set forth). On August 18th or 19th, the truck was involved in a collision with a motor vehicle belonging to one James C. Burke; Burke sustained personal injuries and his vehicle was damaged. At the time of the collision, the truck was being operated by Ernest Galloway, an employee of Delta, who was operating the same on the business of his employer. Delta's insurer was Continental; Brockway's was Zurich.

Burke brought suit against Brockway, Delta, and Galloway. Continental then made a written demand on Zurich that it, as the primary carrier, take over the defense of the cause. Zurich refused to comply with this demand. After an agreement with Zurich that $6,000 was a reasonable figure upon which to settle, Continental negotiated a settlement with Burke for that amount, and, then brought suit against Zurich for reimbursement. Judge Powers decided that Brockway owned the truck at the time of

---

1. On August 12, 1958, Kaumjian signed a "Used Car Order" for the truck. More will be said of the "order" later.

the collision and that Zurich was the primary insurance carrier. This appeal followed.

Two questions are presented: (1), Was Brockway the owner of the truck at the time Burke was injured?; and (2), If Brockway were the owner, was Delta's insurer (Continental) liable for all, or any part, of the settlement made with Burke?

## I

The "Used Truck Order" mentioned above stated that it was "given and accepted subject to conditions":

\* \* \*

"(2) It is agreed that title is not intended hereby to pass to purchaser."

\* \* \*

"(4) There are no understandings, agreements, or representations \* \* \* not specified herein \* \* \*."

\* \* \*

"(6) This order shall not be binding upon vendor until accepted by vendor in writing hereon, by its authorized agent, \* \* \*."

Appellant first suggests that Delta must be held to have been the "owner" of the truck at the time of the accident by reason of Code (1957), Article 66½, Section 2 (32), although conceding that title "rested" in Brockway. The provision of the Code referred to is in the "Motor Vehicles" Article, and states: "The term 'owner' shall include any person, firm, association or corporation owning a vehicle or having the exclusive use thereof under contract of purchase, lease, hiring or rental thereof, or otherwise." Appellant argues that Delta had the exclusive use of the vehicle at the time of the accident; therefore, it necessarily follows, by reason of the statute, that Delta was the owner.

We do not think the answer to this claim requires lengthy elaboration. In *Baughman v. Milstone*, 144 Md. 233, this Court in construing the language of the statute (then Article 56, § 134) stated that statutes must be construed reasonably and with reference to the purposes sought to be accomplished by

them. It then held that one who hired a motor vehicle by written agreement which gave to the hirer in temporary possession exclusive control of the vehicle for a short period of time was not the "owner" thereof for the purposes of registration, titling, etc., under the provisions of the then Section 134 of Article 56, *et seq.* We do not think the Legislature intended by said Section 2 (32) to constitute everyone, who takes a motor vehicle out for trial, the "owner" thereof so as to be included in his insurance policies by reason of the statute alone, even though he may be temporarily placed in exclusive control of the vehicle; and we hold that the Legislature did not so intend.

Appellant next contends that Delta was the owner of the truck because Code (1957), Article 83, § 37 (2) states that when goods are delivered to a buyer on approval or trial, the property passes when the purchaser signifies his acceptance, or his adoption of the sale in some manner; and, if the prospective vendee fails to signify his acceptance, his acceptance may be implied if the goods are not returned within a reasonable time. No claim is made that the parties to a contract of sale (we do not intimate that Delta and Brockway had a contract of sale at the time of the collision) are required to include these provisions in all contracts of sale. As a matter of fact, § 37 sets forth rules for ascertaining the intention of the parties as to the time of the passing of the property in goods "unless a different intention appears." In the instant case, the "order" specifically stated that title was not intended to pass and the order would not be binding on vendor until accepted by vendor in writing, and Mr. Barry, Branch Manager for Brockway in Baltimore, testified that an order could not be accepted at "branch level," but it was necessary to mail the order forms to the home office in New York State for acceptance. He added that an order was an offer from a prospective purchaser until accepted by the home office. The "order" was still in the Baltimore Branch of Brockway at the time of the accident, without acceptance by Brockway. Code (1957), Article 83, § 36 provides that title passes when the parties intend it to pass. As just stated above, the explicit terms of the order provide that title was not intended to pass by any action taken by the parties prior to the accident. We, therefore, hold that this contention is without merit. Cf. *Syriani v. Gebhart,* 195 Md. 69.

In regard to who was the "owner" of the truck at the time of the accident, appellant places considerable emphasis on the alleged promise of Kaumjian to have the truck covered by Delta's fleet policy with Continental. No question is here involved of the possible liability of Delta to Brockway for failing to carry out this promise; the question here is whether Delta is liable as an insured of Continental, so as to render Continental liable for the payment of all, or a portion, of Burke's claim. As noted above, Kaumjian did not, at any time before the accident, have the truck insured under Continental's policy. It is obvious that an unfulfilled oral promise of an insured that he will have a motor vehicle covered under his, the insured's, fleet policy is not sufficient to effectuate such coverage and to bind the insurer; hence, under the circumstances here involved, the alleged conversation has little, if any, significance.

We hold that Brockway was the owner of the truck at the time of the collision.

## II

Having decided that Brockway was the owner at the time of the collision, the answer to the remaining question is made easy by previously adjudicated decisions.

The Zurich policy contained the following pertinent provisions:

> "III. *Definition of Insured*. The unqualified word 'insured' includes the named insured and also includes * * * (2) under coverages A and B any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * * *."

> * * *

> "3. *Definitions* * * *
> "(1) Owned Automobile — an automobile owned by the named insured; * * *

> * * *

> "14. *Other Insurance.* * * * the insurance under this policy with respect to loss arising out of * * * the use

428

of any non-owned automobile shall be *excess* insurance over any other valid and collectible insurance." (Emphasis added.)

The Continental policy contained identical provisions; and Zurich's policy also contained the following endorsement:

"12. It is agreed that with respect to any automobile loaned by the named insured to any person or organization for demonstration or other purposes, such insurance as is afforded by the policy for coverages A and B shall not apply with respect to such person or organization, *if there is other valid and collectible insurance in force for such person or organization either as an insured under a policy applicable with respect to the automobile or otherwise.*" (Italics added.)

When the identical provisions of the policies quoted above are juxtaposed, it seems apparent that primary coverage goes with the ownership of the vehicle; and when a person such as Galloway is driving a vehicle owned by the named insured, Brockway, with its permission, he is covered primarily by the owner's policy (Zurich's) and the insurance afforded that driver (Galloway) in the non-owners' policy (Continental's) is excess coverage.

Almost the precise, if not the precise, question here involved was decided, apparently for the first time, by the Circuit Court of Appeals for the Seventh Circuit in a lucid and carefully reasoned opinion by Judge Major in *Zurich Gen. Acc. & Liability Ins. Co., Ltd., v. Clamor,* 124 F. 2d 717 (1941). There, the policies of insurance contained almost identical language as that employed in those in the case at bar: one provided that the insurance afforded a non-owner "shall be excess insurance over any other valid and collectible insurance * * *" (this was the C. & G. policy) ; the other stated that the omnibus clause contained therein was not applicable to "any person * * * with respect to any loss against which he has other valid and collectible insurance [this was the Zurich policy]." Damage was caused by a non-owner driver who was operating a motor vehicle covered by the Zurich policy, with the permission of the

owner. The non-owner driver was insured under the C. & G. policy. Declaratory judgment relief was requested as to the rights and liabilities of the respective parties. The Court decided that the more specific language, "excess insurance," was controlling over the general term "other insurance," and the "excess insurance" provided in the one policy was not the "other insurance" required in the other. It, therefore, held Zurich primarily liable to the extent named in its policy, and the C. & G. policy liable only for any excess over the coverage provided by Zurich. See also *Citizens Co. v. Allied Co.,* 217 Md. 494, where several of the questions here involved were considered and decided in accord with this opinion. And compare *Employers' Liability Ass. Corp. Ltd. v. Fireman's Fund Ins. Group,* 262 F. 2d 239 (C.C., D.C.) ; *Neighbours v. Harleysville Mut. Cas. Co.,* 169 F. Supp. 368 (D.C., Md.).

In construing the effect of a provision such as endorsement 12 of Zurich's policy, 8 Appleman, *Insurance Law and Practice,* Section 4914, states that a non-ownership clause with an excess coverage provision does not constitute other valid and collectible insurance within the meaning of a primary policy with an omnibus clause.

In view of what we said above and in *Citizens Co. v. Allied Co., supra,* it is not necessary to consider at any length the suggestion of appellant that this is possibly a case wherein the damages should be prorated. There we said that if insurance be *pro rata,* it cannot at the same time be excess insurance as to the same loss. It obviously follows that if insurance be excess coverage, as we have held Continental's insurance to be, it cannot also be *pro rata* insurance as to the same loss.

It was stipulated that the $6,000 settlement figure was within the limits of each policy. We hold that Zurich was primarily liable to Burke to the extent of its policy and the Continental policy afforded excess insurance had the damages exceeded the limit named in the policy of Zurich.

*Judgment affirmed, with costs.*