Frances M. PARSONS, surviving spouse, and Anthony Parsons, Richard C. Parsons, Danny B. Parsons, individually and surviving infant children of Curtis Parsons, deceased, and Frances Parsons, individually and personal representative of the estate of Curtis Parsons, deceased, and Senida Murillo, a minor, by her guardian and next friend, Frances M. Parsons

v.

ERIE INSURANCE GROUP and Progressive Casualty Insurance Company.

Civ. A. No. M–82–710.

United States District Court, D. Maryland.

Aug. 8, 1983.

A. Harold DuBois and Verderaime & DuBois, P.A., Baltimore, Md., and Edward D.E. Rollins, III, Elkton, Md., for plaintiffs.

Edward C. Mackie and Rollins, Smalkin, Richards & Mackie, Baltimore, Md., for defendant Erie Ins. Group.

David M. Buffington, Bruce R. Parker and Semmes, Bowen & Semmes, Baltimore, Md., for defendant Progressive Cas. Ins. Co.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

On February 21, 1981, Curtis Parsons was driving his 1980 Pontiac Bonneville, Maryland license number AAE–631. He was accompanied by his wife, Frances Parsons, and their four children, Senida Murillo, Daniel Parsons, Anthony Parsons, and Richard Parsons. They were involved in a collision with a 1974 Oldsmobile, owned and driven by an uninsured motorist, Manuel Molina. The parties to this litigation agree that the accident was caused by the uninsured motorist. As a result of the accident, Curtis Parsons died and the remaining occupants of the 1980 Pontiac were injured.

This suit, originally instituted in the Circuit Court for Cecil County, was removed to this court by the defendants, the Erie Insurance Group (Erie) and the Progressive Casualty Insurance Company (Progressive) in March of 1982. Originally, Frances Parsons sought a declaratory judgment identifying the responsibility of the two defendants for the claims made by her on behalf of Curtis Parsons, the deceased, and Senida Murillo.[1] On March 4, 1983, Erie filed a Motion for Summary Judgment as to these claims.[2] Progressive and Frances Parsons filed oppositions to that motion.[3] Thereafter, the complaint was amended to seek de-

claratory relief as to the claims of the remaining four occupants of the car.[4] Subsequently, Progressive filed a Motion for Summary Judgment as to the claim made on behalf of Curtis Parsons and as to the claims made by or on behalf of the remaining occupants in the 1980 Pontiac.[5] The plaintiffs and Erie responded separately to this motion.[6] A hearing was held on the motions on July 22, 1983. In addition to the above, the plaintiffs and Erie have supplied additional argument to the court by letters.[7]

At the time of the accident in February 1981, two relevant insurance policies were in effect.

In November of 1980, Progressive issued Policy No. 1284867–0 to Curtis Parsons, and this policy was in effect in February of 1981 at the time of the accident. (Paper No. 22, Exh. C). The named insured was Curtis Parsons, and the insured vehicle was a 1981 Ford Escort. It is admitted that the 1980 Pontiac involved in the February accident was not listed as an insured vehicle in the policy issued by Progressive. While the Progressive policy did cover Curtis Parsons with respect to uninsured motorist coverage when he rode in or drove other cars, the policy did not apply to,

"bodily injury to an insured while occupying a highway vehicle (other than an insured highway vehicle) owned by a named insured or any relative resident in the same household as the named or designated insured."

The definition of "insured highway vehicle" in the policy excluded a motor vehicle owned by the named insured but not described in the policy declarations as an insured vehicle.[8]

---

1. Paper No. 4.

2. Paper No. 14.

3. Paper Nos. 17 & 21.

4. Paper No. 22.

5. Paper Nos. 34 & 35.

6. Paper Nos. 36 & 38. *See also* Paper Nos. 37 & 39, Progressive's Replies.

7. Paper Nos. 43 & 44.

8. An "insured highway vehicle" is defined in the Progressive policy as "a highway vehicle:
    (a) described in the declarations as an insured highway vehicle to which the bodily injury and property damage liability coverage of the policy applied;
    (b) while temporarily used as a substitute for an insured highway vehicle as described in subparagraph (a) above, when withdrawn

Erie issued Policy No. M–06–73–00345R in June of 1978. (Paper No. 22, Exh. A). Although this policy was applied for by Curtis Parsons and was issued to him, the policy was intended to cover only Frances Parsons as a named insured. An endorsement to the aforesaid policy provided as follows:

"It is agreed that effective on and after the date shown below, the Erie shall not be liable for damages, losses, or claims caused while the motor vehicle described in the policy or any other motor vehicle to which the terms of the policy would ordinarily be extended is being operated by or in charge of

<u>Curtis Parsons</u>
NAMED PERSONS(S)

whether or not such operation or charge was with the express or implied permission of a person insured under this policy."

(Paper No. 22, Exh. B, at 2) This policy was periodically renewed and was in effect as to Frances Parsons in February, 1981. At that time, the 1980 Pontiac was listed as an insured vehicle.[9]

I. *Statutory Notice Requirements*

The *Md.Ann.Code,* Art. 48A, §§ 240AA, 240B, 240C, 240C–1, and 240D outline the procedure which an insurance company must follow to effect a cancellation, nonrenewal, increase in premium or reduction of coverage under a motor vehicle liability insurance policy. Prior notice must be sent by the insurer to the insured, stating what action is to be taken, the proposed effective date of the action, the insurer's actual rea-

sons for taking such action, identification of which persons are to be excluded from coverage, the right of the insured to replace the insurance through the Maryland Automobile Insurance Fund (MAIF), the right of the insured to protest the action, and the procedures for obtaining review from the State Insurance Commissioner of Maryland. § 240AA(b).

In September of 1975, Erie issued Policy No. M09–17–02292 with Frances and Curtis Parsons as named insureds. In its answers to interrogatories, Erie stated that, after learning of the history of Mr. Parsons' speeding violations, a notice of cancellation of the 1975 policy was sent by certified mail to Curtis and Frances Parsons on December 3, 1975. Erie also stated that as of January 17, 1976, any coverage under Policy No. M09–17–02292 had ended. (Paper No. 30, ¶¶ 4 & 5). At the hearing on July 22, 1983, all parties agreed that Policy No. M09–17–02292 is not at issue in this case and that it had been effectively cancelled.

In its Motion for Summary Judgment, Erie contended that, due to the endorsement attached to the 1978 Policy No. M06–73–00345R, it is not liable for any claims made on behalf of Curtis Parsons. In its response to the Motion, Progressive, joined by the plaintiffs, had originally alleged that Erie had not complied with the statutory prerequisites, *Md.Ann.Code,* Art. 48A, §§ 240AA, 240B, 240C, 240C–1, and 240D when excluding Curtis Parsons from coverage under the 1978 Erie policy endorsement and, therefore, the endorsement was invalid and coverage should be provided by Erie as required under § 240D.[10]

---

from normal use because of its breakdown, repair, servicing, loss or destruction;
(c) while being operated by the named or designated insured or by the spouse of either if a resident of the same household; but the term "insured highway vehicle" shall not include:
(i) under subparagraphs (a) and (b) above, a vehicle unless being used by or with the permission of the named or designated insured or of the spouse of either if a resident of the same household; or
(ii) under subparagraphs (b) and (c) above, a vehicle owned by the named insured, any designated insured or any resident of the

same household as the named or designated insured."

**9.** Paper No. 30; Premium application and statement of payment for Policy No. M06–73–00345R. *See also* Paper No. 35, Exh. 3 (describing the car insured under M06–73–00345R to be a 1980 Pontiac).

**10.** Section 240D provides that if an insurer cancels a policy, does not renew a policy, or increases premiums without following the requirements of sections 240AA, 240B, and 240C, then the insurer will be viewed as continuing to provide the cancelled coverage.

At the hearing, Progressive conceded that its pretrial investigation had produced no evidence that the proper notices had not been given under the aforesaid statutes. The plaintiffs made the same concession. Progressive additionally conceded the validity of the endorsement, while disagreeing with Erie as to its effect under the circumstances of this case. The plaintiffs continued to challenge the validity as well as the effect of the endorsement.

Subsequent to the hearing, however, the plaintiffs, by letter of July 25, 1983, noted that § 240C–1 applied only when there has been a "cancellation, nonrenewal or premium increase." [11] Because the Erie 1978 policy did not cancel, renew, or increase the premiums of any existing policy of insurance, the previous Erie insurance having expired in 1976, the plaintiffs belatedly asserted that § 240C–1 does not apply to this case.

Erie, by letter of July 27, 1983, agreed with plaintiffs' counsel that § 240C–1 is inapplicable based on the facts of the present case. For the same reasons, Erie contended that the procedural statutory requirements of §§ 240AA, 240B, and 240C similarly do not apply.

■ The above statutes appear to this court to encompass a statutory scheme, designed to regulate and monitor the cancellations of, or changes in, existing policies of insurance, whose purpose is to safeguard the interests of persons who are already insured.[12] There is no indication that regulation of new policies was intended to be achieved by these statutes. Consequently, this court concludes that the procedural requirements of *Md.Ann.Code,* Art. 48A, §§ 240AA, 240B, 240C, 240C–1, and 240D are not applicable to insurers when issuing totally new policies. Therefore, Erie's alleged failure to provide notice would not invalidate the endorsement to the 1978 Erie policy. In addition, the court concludes that the provisions of § 240C–1, applying as they do only to existing policies of insurance, were not intended to limit the "right [of an insurer] to select the risks it concludes profitable to insure." *Insurance Commissioner of Maryland v. Allstate Insurance Co.,* 268 Md. 428, 440, 302 A.2d 200 (1973).

## II.  *Statement of Positions*

During the oral hearing and through papers filed with the court, the positions of the parties with respect to the claims made on behalf of Curtis Parsons and those claims made by or on behalf of the remaining parties for uninsured motorists (UM) benefits and personal injury protection (PIP) benefits have become clear.

Quite simply, Erie asserts that, under the plain language of the endorsement to the 1978 Erie policy, it is not liable for claims,

---

11.  Section 240C–1 of the *Md.Ann.Code,* Art. 48A, provides for the exclusion of a named driver,

  (a) In any case where an insurer is authorized under this article to cancel or nonrenew or increase the premiums on an automobile liability insurance policy under which more than one person is insured because of the claim experience or driving record of one or more but less than all of the persons insured under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium increase offer to continue or renew the insurance, but to exclude from coverage, by name, the person or persons whose claim experience or driving record would have justified the cancellation or nonrenewal. The premiums charged on any such policy excluding a named driver or drivers shall not reflect the claims experience or driving record of the excluded named driver or drivers.

  (b) With respect to any person excluded from coverage under this section, the policy may provide that the insurer shall not be liable for damages, losses, or claims arising out of the operation or use of the insured motor vehicle, whether or not such operation or use was with the express or implied permission of a person insured under the policy. (1972, ch. 73, § 1; 1973, ch. 622).

12.  Unlike § 240C–1, § 240AA also applies, in addition to cancellations, nonrenewals, and increases in premiums, to reductions in coverage. The language of the statute, however, reveals that the statutory prescriptions are applicable only when the reduction in coverage is made with regard to an existing policy. There is no indication that the requirements are to be applied to new policies.

losses, or damages caused while the 1980 Pontiac, the insured vehicle, was being operated by Curtis Parsons. Because Curtis Parsons was driving the Pontiac at the time of the February 1981 accident, Erie, pursuant to the endorsement, denied coverage for any claims made on behalf of Curtis Parsons or made by or on behalf of the remaining occupants of the Pontiac for UM or PIP benefits. Originally, Erie relied upon § 240C–1 as statutory approval for the endorsement. Acknowledging as it now does by post hearing letter that § 240C–1 does not apply to these facts, Erie argues that as an insurer it could unqualifiedly determine and limit the risk it would cover. Consequently, according to Erie, the endorsement is valid and its literal language should apply.

Progressive concedes that under the policy it issued to Curtis Parsons, and in light of the holding in *Pennsylvania National Mutual Casualty Ins. Co. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980), it must pay the claim for PIP benefits made on behalf of Curtis Parsons.[13] The claim for UM benefits made on behalf of Curtis Parsons, however, is denied by Progressive on the basis of the policy exclusion of named insureds operating uninsured vehicles which they own. Because the 1980 Pontiac is an uninsured vehicle under the terms of the Progressive policy, coverage for Curtis Parsons' UM benefits is denied. Finally, although admitting that coverage is available to the remaining occupants of the Pontiac for PIP and UM benefits under its policy, Progressive contends that in light of the holding in *Gartelman,* 288 Md. 151, 416 A.2d 734, Erie must provide PIP and UM coverage to the passengers of the car. Progressive submits that under *Citizens Cas. Co. v. Allied Mutual Ins. Co.,* 217 Md. 494, 144 A.2d 73 (1958), the Erie coverage is deemed

primary coverage and the Progressive coverage is excess. In view of the fact that the *Md.Ann.Code,* Art. 48A, § 543(a) prohibits supplementation of PIP and UM benefits, Progressive argues that its excess coverage is not permitted by statute and benefits to the remaining occupants have been accordingly denied.

The plaintiffs admit the validity of the exclusion in the Progressive policy under which the UM benefits for Curtis Parsons are denied. They join Progressive in asserting that in light of *Gartelman,* 288 Md. 151, 416 A.2d 734, Erie must extend PIP and UM coverage to the passengers, and the plaintiffs also urge the extension of UM coverage by Erie to Curtis Parsons on these grounds. In addition, the plaintiffs contend that, because § 240C–1 does not apply to the facts of this case, the endorsement to the 1978 Erie policy is invalid and, therefore, UM and PIP coverage is available from Erie to all occupants of the 1980 Pontiac.

## III. *Erie's Liability*

In *Gartelman,* 288 Md. 151, 416 A.2d 734, the Maryland Court of Appeals examined a case in which the facts were undisputed. Doris Gartelman, the claimant, was an insured motorist under a policy issued to her husband by Pennsylvania National Mutual Ins. Co. While operating a motor vehicle not insured under the policy, the claimant was forced off the road by an unidentified vehicle. The claimant's PIP and UM benefits claims were denied because of an exclusion in the policy which stated that coverage is not available to a named insured or a relative injured while occupying an uninsured motor vehicle which is owned by the named insured. The court examined the PIP and UM claims separately.

---

**13.** Any claim made on behalf of Curtis Parsons for Personal Injury Protection (PIP) would not be effectively precluded by the Progressive exclusion. The legislature has determined that every vehicle liability insurance policy must provide PIP coverage, *Md.Ann.Code,* Art. 48A, § 539, and prior to 1982 the exclusion contained in the Progressive policy was not recognized as an exclusion by the legislature of

Maryland. Art. 48A, § 545 (1977). *See Gartelman,* 288 Md. at 154–57, 416 A.2d 734 (only the exclusions to PIP identified in § 545 are valid).

In 1982, the legislature amended the exclusions to PIP to include the exclusion contained in this case. Art. 48A, § 545(c) (1982). Any claims filed arising out of incidents occurring after the effective date of this amendment would now be excluded.

With regard to the PIP benefits, the court noted that the purpose of PIP coverage, required by statute to be included in every motor vehicle liability policy, *Md.Ann. Code,* Art. 48A, § 539, was to assure financial compensation to victims of motor vehicle accidents without regard to fault. The Court of Appeals reasoned that where the Maryland legislature had chosen to enumerate specifically those circumstances under which the PIP coverage could be excluded, *Md.Ann.Code,* Art. 48A, § 545,[14] additional exclusions could not be validly inserted in a policy. *Gartelman,* 288 Md. at 156, 416 A.2d 734. *See Coleman v. State,* 281 Md. 538,

546, 380 A.2d 49 (1977); *State Ins. Comm'r v. Nationwide Mutual Ins. Co.,* 241 Md. 108, 117, 215 A.2d 749 (1966). Because the exclusion relied on by the insurer was not contained in § 545, the court concluded that the denial of PIP benefits under the exclusion was invalid.

Turning to the question of whether the exclusion could be the basis for the denial of UM benefits, the court concluded that the denial of UM benefits was also improper. Section 541(c) of Article 48A of the Maryland Code requires that UM coverage be contained in every motor vehicle liability policy issued.[15] Section 541(c) further di-

---

**14.** Section 539(a) provides as follows:

(a) No policy of motor vehicle liability insurance shall be issued, sold or delivered in this State after January 1, 1973, unless the policy also affords the minimum medical, hospital and disability benefits set forth herein; or unless equivalent medical, hospital, and disability benefits are provided by a policy issued to the insured by a nonprofit health service plan or by an authorized insurer with the policy in each case subject to approval by the Commissioner. The benefits, or their equivalent, shall cover the named insured and members of his family residing in his household (except such persons as may be specifically excluded in accordance with § 240C–1 of this article) injured in any motor vehicle accident (including an accident involving an uninsured motor vehicle or a motor vehicle whose identity cannot be ascertained), other persons injured while occupying the insured motor vehicle as a guest or passenger, or while using it with the express or implied permission of the named insured (except as provided in § 240C–1 of this article), and pedestrians injured in an accident in which the insured motor vehicle is involved or individuals injured in, on, or alighting from any other vehicle operated by animal or muscular power in an accident in which an insured vehicle is involved. The minimum medical, hospital and disability benefits shall include up to an amount of $2,500, for payment of all reasonable expenses arising from the accident and incurred within three years from the date thereof for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services; and in the case of an income producer, payment of benefits for loss of income as the result of the accident; and where the person injured in the accident was not an income or wage producer at the time of the accident, payments of benefits must be made in reimbursement of necessary and reasona-

ble expenses incurred for essential services ordinarily performed by the injured person for care and maintenance of the family or family household. The insurer providing loss of income benefits may require, as a condition of receiving such benefits that the injured person furnish the insurer reasonable medical proof of his injury causing loss of income.

Section 545 identifies the exclusions permitted by the legislature:

The coverages prescribed under § 539 of this article may exclude from benefits thereunder any person otherwise insured under the policy who:

(a) Intentionally causes the accident resulting in the injury, or

(b) Is injured while operating or voluntarily riding in a vehicle known by him to be stolen, or

(c) Is injured while in the commission of a felony or while in violation of § 21–904 of the Transportation Article.

(d) With respect to motorcycles, economic loss benefits required under § 539 may be excluded, or may be offered with deductibles, options or with specific exclusions. (1972, ch. 73, § 1; 1977, ch. 765, § 13.).

**15.** Section 541(c) provides as follows:

(c) *Uninsured motorist coverage.*—In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. The coverage required under this subsection (c) shall be in such form and subject to such conditions as

rects that coverage for every insured should be no less than that afforded a qualified person under Art. 48A, §§ 243H and 243–I. Although § 243H permitted the exclusion of coverage where the claimant was operating an uninsured vehicle owned by him, the statute limited the exclusion to claims made by the named insured. Consequently, since the claimant of UM benefits in *Gartelman* was not the named insured, but was instead his spouse, the court concluded that the denial of benefits was improper.

*Gartelman* highlights, and even a cursory review of the insurance statutes of Maryland reveals, a well-established legislative policy designed to insure fiscal responsibility by those persons owning and operating motor vehicles in the State. *Md.Ann.Code,* Art. 48A, §§ 243A–N, 538–47; *Md. [Transp.] Code Ann.,* §§ 17.101 *et seq.* To this end, the legislature has required, through § 539, that every motor vehicle liability insurance policy must provide PIP coverage for named insureds and members of his family residing in his household. Legislatively recognized exclusions from PIP coverage are limited to those enumerated in § 545 and those persons as may be specifically excluded in accordance with § 240C–1. *See Gartelman,* 288 Md. at 154–56, 416 A.2d 734. The requirement of PIP coverage was enacted so as to provide compensation to victims of motor vehicle accidents without regard to fault. § 539; *id.* at 154 & n. 2, 416 A.2d 734.

may be approved by the Commissioner of Insurance. Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect. In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A §§ 243H and 243–I. The coverage required under this subsection shall be primary to any right to recover from the Maryland Automobile Insurance Fund pursuant to § 243H of this article.

The basic premise of statutory construction is to ascertain and effectuate the actual intent of the legislature. *Northland Ins. Co. v. Walls,* 291 Md. 604, 436 A.2d 61 (1981); *Department of State Planning v. Mayor of Hagerstown,* 288 Md. 9, 14, 415 A.2d 296 (1980); *Montgomery County, Md. v. Lindsay,* 50 Md.App. 675, 440 A.2d 411 (1982). If any provision of an automobile liability insurance policy conflicts with the requirements of the statute regulating such policies, it is invalid. *Gartelman,* 288 Md. 157, 416 A.2d 734; *Peninsula Ins. Co. v. Houser,* 248 Md. 714, 721, 238 A.2d 95 (1968); *Keystone Mutual Casualty Co. v. Hinds,* 180 Md. 676, 679, 26 A.2d 761 (1942); *Lord v. Maryland Automobile Ins. Fund,* 38 Md.App. 374, 377, 381 A.2d 23 (1977). Erie's contention that it may extend coverage to the risks it chooses is, therefore, not entirely accurate.

The endorsement to the Erie policy denies to the insured under that policy the PIP protection which is required by statute.[16] The required PIP coverage to be contained in every motor vehicle liability policy must be available to the named insured and all family members residing in his household.[17] Frances Parsons, Curtis Parsons, and their children, as named insured and household family members, are, therefore, to be provided benefits unless the statute recognizes the exclusion relied upon by Erie in its endorsement to the 1978 Erie policy.

16. Although this case differs from *Gartelman* in that another insurance policy will provide some of the benefits, this does not alter the inquiry or results reached by this court. For as *Gartelman* makes clear, the court must determine what an insurance policy may exclude under the statute. There is no indication from the legislature that, if the benefits are available under a second policy, they need not be provided by the first policy. The legislature required that *every* policy of insurance provide the same PIP and UM coverage so as to prevent the possible result that no insurer would be responsible for providing benefits.

17. *See* note 14 *supra.*

The Maryland Statutes do not permit an insurance company to exclude a member of the household from PIP coverage unless he or she (1) intentionally causes the accident, (2) is riding in a stolen vehicle, (3) is committing a felony, (4) is riding a motorcycle, or (5) was an insured and is now specifically excluded in accordance with § 240C–1. It is clear that the first four exclusions do not apply to the facts of this case, and the plaintiff and Erie have agreed, and this court has concluded, that the fifth exclusion does not apply to these facts. Even if this court were inclined to stretch the latter exclusion to Curtis Parsons based on the assumption that his claims or driving record was such that it would permit an exclusion under § 240C–1, § 539's purpose, providing for the payment of PIP benefits without regard to fault, would direct this court to require the payment of PIP benefits to Curtis Parsons as well as the passengers in the 1980 Pontiac.

In addition to requiring PIP coverage, the legislature, pursuant to § 541(c), has required every policy to provide UM coverage for damages suffered by an insured, and in no case is the UM coverage to be less than that afforded under Art. 48A, §§ 243H and 243–I. As the Maryland Court of Appeals stated, "[t]he primary purpose of this requirement is to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists." *Gartelman,* 288 Md. at 157, 416 A.2d 734. *See also State Farm Mutual Automobile Ins. Co. v. Maryland Automobile Ins. Fund,* 277 Md. 602, 605, 356 A.2d 560 (1976); *Allied American Mutual Fire Ins. Co. v. Commissioner of Motor Vehicles,* 219 Md. 607, 611, 150 A.2d 421 (1959).

■ Section 541(c) provides that UM benefits are to be available for damages sustained by the insured. The Erie policy provides that the subscriber, his or her spouse, and any relative is an insured and entitled to UM coverage. Therefore, Curtis Parsons and the children were insureds under the policy. Erie's endorsement does not exclude Curtis Parsons from coverage as an insured; indeed, if Curtis Parsons had been a passenger in the 1980 Pontiac at the time of the accident, there would be no doubt that he would be entitled to UM coverage. Rather, Erie's endorsement permits its denial of claims from insureds when Curtis Parsons is driving. There is no sanction for such an exclusion in § 243H and § 243–I, and, therefore, UM benefits intended to compensate innocent victims of accidents were improperly denied by Erie. The innocent victims of the February 1981 accident, Curtis and Frances Parsons and their children, are entitled to UM benefits from Erie.

### IV. *Responsibility for the Payment of the PIP and UM Benefits*

The court has determined that Erie may not deny PIP or UM benefits as to any of the claims made on behalf of the occupants in the 1980 Pontiac. Progressive concedes that under its policy it is required to provide PIP benefits to all of the occupants of the 1980 Pontiac, and UM benefits to everyone in that car except Curtis Parsons. This court returns to the question of which insurance company is responsible for providing primary coverage for these claims under the facts of this case.

■ In Maryland, as elsewhere, where there is disagreement as to the coverage afforded an individual under separate policies of insurance, the courts look to the contractual language contained in those policies to determine what, and from which company, coverage is to be made available. *See Consolidated Mutual Insurance Co. v. Bankers Ins. Co.,* 244 Md. 392, 223 A.2d 594 (1966); *Zurich Ins. Co. v. Continental Casualty Co.,* 239 Md. 421, 212 A.2d 96 (1964); *Citizens Casualty Co. v. Allied Mutual Ins. Co.,* 217 Md. 494, 144 A.2d 73 (1958);[18]

---

**18.** *Citizens Co. v. Allied Mutual Ins. Co.,* 217 Md. 494, 144 A.2d 73 (1958), does not hold, as Progressive suggests, that the insurer of a motor vehicle, as opposed to the insurer of the driver of that vehicle at the time of the accident, is always the provider of primary insurance. The court there simply determined that, where the insurer of the motor vehicle had

*United States Fire Ins. Co. v. Maryland Casualty Co.,* 52 Md.App. 269, 447 A.2d 896 (1982). *See generally* 8C Appelman, *Insurance Law & Practice* §§ 5102 (1981).

▉ Under the Erie policy, PIP coverage is to be paid by the company insuring the vehicle which the injured claimant was occupying at the time of the accident. Erie, as the insurer of the 1980 Pontiac, has, therefore, assumed the primary coverage for the PIP benefits.

Section 543(a) of the *Md.Ann.Code* provides:

"Notwithstanding any other provision of this subtitle, no person shall recover benefits under the coverages required in §§ 539 and 541 of this article from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis."

The Court of Appeals, in examining this section of the Maryland Code, has declared that "duplicative" means payment in full twice or more for the same claim, *Yarmuth v. Government Employees Ins. Co.,* 286 Md. 256, 407 A.2d 315 (1979), and "supplemental" means securing remuneration over and above the recovery a claimant is legally entitled to recover under the requirements of coverage specified by statute. *See Yarmuth,* 286 Md. 256, 407 A.2d 315 (1979); *Langston v. Allstate Ins. Co.,* 40 Md.App. 414, 392 A.2d 561 (1978).

Because in this case the Erie policy provides the amount of PIP coverage legally required under § 539, no further supplemental benefits may be obtained from Progressive.

Unlike the PIP coverage for which, under the Erie policy, Erie assumed the burden of primary coverage, when speaking of UM benefits, the Erie policy provides:

"if anyone we protect has other similar insurance that applies to the accident, we

already paid the claim, it could not recover any of this payment from the insurer of the driver. The court held that the clause of the driver's insurance policy identifying its coverage as excess was not violative of public policy as indicated by the statutory insurance law in effect at the time.

will pay our share of the loss. Our share will be the proportion the limit of protection of this coverage bears to the total limit of protection of all applicable insurance. Recovery will not exceed the highest limit available among the applicable policies."

The Erie policy requires pro rata contribution from all insurers who provide UM coverage to the injured insured.

▉ Progressive contends that under its policy issued to Curtis Parsons it is liable only for excess UM coverage, but that such excess UM coverage is forbidden by § 543.[19] An examination of the "Other Insurance" clause contained in the Progressive policy, however, reveals that Progressive too has agreed to provide primary UM insurance and to be liable for its pro rata share if other UM insurance does exist.

The Progressive "Other Insurance" clause provides as follows:

"With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

Except as provided in the foregoing paragraph, if the insured has other similar bodily injury insurance available to him and applicable to the accident, the damages for bodily injury shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applied than the limit of liability hereun-

In the present case, no clause in the Progressive policy identifies its coverage as excess coverage.

19. *See* note 18 *supra.*

der bears to the sum of the applicable limits of liability of this insurance and such other insurance."

It is clear from the language in the Progressive policy that the first paragraph of the "Other Insurance" provision applies only when the insured is occupying a vehicle not owned by the named insured. As Progressive pointed out in its Motion for Summary Judgment, "[i]t is undisputed that the decedent owned the vehicle [the 1980 Pontiac]." (Paper No. 34, at 4). Since the named insured, Curtis Parsons, the decedent, undisputedly owned the vehicle, the first paragraph of the "Other Insurance" provision does not apply, and, therefore, the Progressive coverage for uninsured motorists benefits is not excess coverage forbidden by § 543.

█ As the second paragraph of the "Other Insurance" provision contained in the Progressive policy demonstrates, Progressive is liable for its proportionate share of the loss. Therefore, this court concludes that Progressive and Erie are both liable for the claims of Frances Parsons and her children for UM benefits. This combined coverage, however, in total shall be no greater than the coverage required under one policy by Title 17 of the Transportation Article pursuant to § 541(c). *Yarmuth,* 286 Md. 256, 407 A.2d 315 (1979). Erie is solely responsible for the UM benefit claim made on behalf of Curtis Parsons.

For the reasons set forth above, it is this 8th day of August, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That the Motion for Summary Judgment filed by the defendant Erie be, and the same is hereby, DENIED.

2. That the Motion for Summary Judgment filed by the defendant Progressive be, and the same is hereby, GRANTED in part and DENIED in part as more fully set forth in the body of the Memorandum and Order.

3. That Judgment shall be entered separately in accordance with the Memorandum and Order.

4. That the Clerk shall mail a copy of this Memorandum and Order to counsel for all parties.