899 A.2d 835

**HARLEYSVILLE MUTUAL INSURANCE COMPANY**

v.

**Walter ZELINSKI, et al.**

**No. 81, Sept. Term, 2005.**

Court of Appeals of Maryland.

June 1, 2006.

Marta D. Harting (Brian M. Quinn, DLA Piper Rudnick Gray Cary US LLP, Baltimore, on brief), Kathleen A. Birrane, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Alex J. Brown, Asst. Atty. Gen., on brief), for petitioner.

Andrew Janquitto (Mudd, Harrison & Burch, L.L.P., Gary Berger, Towson, on brief), for respondents.

David M. Funk, Amanda Stakem Conn, Funk & Bolton, P.A., Baltimore, amici curiae.

J. Joseph Curran, Jr., Atty. Gen., Kathleen A. Birrane, Alex J. Brown, Asst. Attys. Gen., amicus curiae.

Lee H. Ogburn, Steven M. Klepper, Kramon & Graham, P.A., Baltimore, amicus.

Argued before BELL, C.J., WILNER, CATHELL, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

WILNER, J.

We granted *certiorari* in this case to consider two issues of importance. The first is whether an insurer may lawfully

cancel or non-renew, or threaten to cancel or non-renew, a commercial automobile liability insurance policy unless the insured agrees to the exclusion of one or more named individuals from the policy—whether, in other words, a "named driver exclusion" endorsement is valid in the context of a commercial, as opposed to a family, policy. The second is whether a declaratory judgment that there is no coverage for a particular claim, entered in an action between the insurance company and its insured, binds a person who (1) has filed a claim against the insured, but (2) was not a party to that action. Each of the two issues has several sub-parts. Because we shall answer the first question in the affirmative, it will not be necessary for us to address either the second issue or some of the sub-parts of the first.

## BACKGROUND

On December 18, 2000, Angela Zelinski and her young son, Dylan, were seriously injured when their car was struck, head-on, by a truck negligently driven by Robert Townsend, III (Robert III). The truck was owned by Mac's Septic Service, an unincorporated entity owned and operated by Robert III's parents, Robert Townsend, Jr. and Louise Townsend. Robert, Jr. had given his son, who worked in the business, permission to use the truck that day.

The truck was one of several vehicles insured under two insurance policies issued by petitioner, Harleysville Mutual Insurance Company—a commercial automobile liability policy with a liability limit of $500,000, and an umbrella policy providing an additional $1,000,000 of coverage. Both policies became effective June 19, 2000, and ran for a year. The basic policy listed seven persons as "operators" of the insured vehicles, including Robert III.

A special endorsement, titled "Maryland Changes—Cancellation and Nonrenewal," permitted Harleysville to cancel the policy prior to its expiration, upon 45 days notice, "[i]f your driver's license, or that of one or more but not all drivers who live with you or customarily use a covered 'auto', has been

suspended or revoked during the policy period."[1] The endorsement continued, however:

> "[B]efore canceling this policy we will offer to continue this policy with a provision excluding coverage for each driver whose license has been suspended or revoked during the policy period. If such an offer is accepted, we will issue an endorsement to that effect."

The umbrella policy provided coverage for "ultimate net loss" in excess of the "applicable underlying limit" but, in an "Auto Liability Limitation," provided that the umbrella insurance did not apply to liability for bodily or personal injury or property damage arising out of the operation or use of an "auto" "unless the liability is covered by valid and collectible 'underlying insurance' as listed in the Schedule of Underlying Insurance, for the full limit shown.…" The Schedule of Underlying Insurance listed only the basic commercial automobile policy issued by Harleysville.

At some point, after the policy had been in force for about three months, Harleysville discovered that Robert III's license had been suspended.[2] Acting pursuant to the endorsement in the policy, Harleysville offered Robert, Jr. the option of either having the policy cancelled or accepting an endorsement that excluded from the policy "any claims arising from accidents which occur while any 'auto' is being operated by [Robert III]." On September 1, 2000, Robert, Jr. elected to accept the endorsement. Robert III thereafter obtained for himself the minimally required insurance—$40,000 aggregate—from the Maryland Automobile Insurance Fund (MAIF). He was insured, to that extent, by MAIF at the time of the accident.

---

1. The term "auto" appears in quotation marks because it is a defined term in the policy.

2. During the short time he had been driving, Robert III managed to collect 18 points on his driving record, most of which arose from a conviction for driving under the influence and a conviction for exceeding the speed limit by more than 30 MPH. His parents were aware of his driving record. Whether his license was still suspended at the time of the accident is not clear.

The Zelinskis must have made a claim promptly after the accident. On January 29, 2001, Harleysville filed suit against Mac's Septic Service, Robert, Jr., and Robert III in the U.S. District Court, seeking a declaratory judgment that Harleysville had no duty to defend or indemnify those defendants against any claims or for any sums which they may incur and pay by reason of injuries sustained by any member of the Zelinski family as a result of the December 18, 2000 accident. The Zelinskis became aware of the action, informed Harleysville that they had an interest in it, and, through counsel, attended depositions taken in the case, but they were not made parties by either Harleysville or the defendants and did not seek to intervene.

In September, 2002, the court granted Harleysville's motion for summary judgment and entered an order declaring that Harleysville was "relieved of any duty to defend or indemnify Defendants for any claims arising out of the December 18, 2000 accident." Relying on Maryland Code, § 27–606(a)(2) of the Insurance Article, the court held that Maryland law allows an insurance company to exclude coverage for a named driver whose driving record could have justified the cancellation or non-renewal of the policy and that Harleysville had effectively excluded coverage for Robert III. See *Harleysville Ins. Co. v. Mac's Septic Service*, 225 F.Supp.2d 595 (D.Md.2002). It does not appear that any appeal was taken from that judgment.

While the declaratory judgment action was pending in Federal court, Keith Zelinski, as Angela's guardian and Dylan's father and next friend, sued Robert, Jr., Louise, and Robert III in the Circuit Court for Cecil County to recover for the injuries and losses sustained as a result of the accident. MAIF petitioned to intervene and offered to tender the $40,000 limit of its policy in settlement of all pending claims. It does not appear that the court ever took any action on that petition. On November 20, 2002, a jury returned a verdict finding that Robert III was negligent, that he was acting within the scope of his employment at the time of the accident, and that Robert, Jr. and Louise were the owners of Mac's Septic Service. After appropriate modifications to the verdict,

judgments were entered against all three defendants in the amount of $1,070,206 in favor of Angela and $647,282 in favor of Dylan, a total of $1,717,488.

This action commenced in March, 2003, when Keith, on behalf of his wife and son, caused to be issued by the Circuit Court for Cecil County a writ of garnishment against Harleysville, alleging that it held property of the judgment debtors, Robert, Jr., Louise, and Robert III. After a brief round-trip detour to the U.S. District Court, Harleysville filed an answer and a motion to dismiss the writ, arguing that, by virtue of the named driver exclusion endorsement validated in the Federal court action, it had no duty to indemnify the judgment debtors and therefore held none of their property. In November, 2003, the Circuit Court entered an order granting the amended motion to dismiss and quashing the writ of garnishment.

Zelinski appealed, raising two issues: whether the Circuit Court erred in concluding that the writ of garnishment was barred by *res judicata* or collateral estoppel, based on the judgment entered in the Federal declaratory judgment action, and whether it erred as well in determining that the named driver exclusion endorsement was authorized under Maryland law. The Court of Special Appeals answered both questions in the affirmative and therefore vacated the Circuit Court order and remanded for further proceedings. *Zelinski v. Townsend*, 163 Md.App. 211, 878 A.2d 623 (2005). We disagree with the intermediate appellate court's conclusion regarding the validity of the named driver exclusion endorsement and, on that ground, shall reverse that court's judgment.

## DISCUSSION

■■■ Insurance policies are contracts and, in Maryland, are treated and construed just like other contracts. As we pointed out in *Mesmer v. M.A.I.F.*, 353 Md. 241, 252, 725 A.2d 1053, 1058 (1999), "[e]xcept as modified by statutes or regulations, the legal principles applicable to contracts generally are also applicable to insurance policies." That includes the principle that "any clause in an insurance policy that is contrary to

the public policy of this State, as set forth in any statute, is invalid and unenforceable." *Stearman v. State Farm,* 381 Md. 436, 441, 849 A.2d 539, 542 (2004).

The policy in question—the contract entered into between Harleysville, as insurer, and the Townsends and Mac's Septic Service, as insureds—is clear. The named driver exclusion endorsement agreed to by Robert, Jr. unambiguously excludes coverage for any claim arising out of an accident caused by Robert III. If we were dealing just with a construction of the policy, therefore, it would be beyond dispute that Harleysville has no duty to indemnify any of the insureds against the judgments entered in the tort action.

The question is whether that endorsement is contrary to, and therefore not permitted by, Maryland law. As we pointed out in *Lewis v. Allstate Ins. Co.,* 368 Md. 44, 47, 792 A.2d 272, 273 (2002) and earlier cases cited there, the General Assembly has enacted comprehensive statutes regulating motor vehicle insurance—statutes that mandate such insurance (purchased or approved self-insurance) for every motor vehicle required to be registered in Maryland, that require policies to contain certain coverages in specified minimum amounts, that require insurers to offer to their insureds certain other kinds of coverages, and that prohibit insurers from engaging in certain practices. The Zelinskis contend that, although a named driver exclusion endorsement is permitted in family and personal automobile insurance policies, it is not permitted in commercial motor vehicle insurance and that the endorsement added to the policy in question here is therefore void and unenforceable. They thus ask that we apply what we said in *Salamon v. Progressive,* 379 Md. 301, 315, 841 A.2d 858, 867 (2004), that "we shall not uphold any exclusion, not authorized by the General Assembly, that excuses or reduces benefits below the statutory minimums."

So far as we know, it was always permissible for an automobile insurance company, in the absence of a statute to the contrary, to decline to offer or renew coverage to a person who did not meet the company's legitimate underwriting crite-

ria, especially a person who, because of a poor driving record, constituted a particularly bad risk. Prior to 1972, it was not legally compulsory for drivers and motor vehicle owners to have liability insurance, and the only constraints in Maryland on an insurer's ability to cancel or refuse to underwrite or renew a policy of motor vehicle insurance, for a reason other than non-payment of premium, were that (1) by virtue of laws enacted in 1970 and 1971, an insurer was prohibited from refusing to underwrite or renew a particular insurance risk for any reason based on the race, creed, color, or sex of an applicant or policy holder or for any other "arbitrary, capricious, or unfairly discriminatory reason," and (2) the insurer had to give 45 days advance notice of cancellation or non-renewal, inform the policy holder of his or her right to replace the insurance through the "assigned risk" plan then in effect, and, upon request, advise the insured of the "actual reasons" for the cancellation or non-renewal. *See* Maryland Code (1957, 1972 Repl.Vol.) Art. 48A, §§ 234A and 240A through 240C.

Section 243 of then-Art. 48A required motor vehicle insurers to participate in an automobile insurance plan, known as the "assigned risk" plan, under which persons, including corporations, who were unable to obtain motor vehicle insurance through "ordinary methods," were eligible for insurance through that plan. Although the statute required that premiums charged for insurance under the plan not be "excessive, inadequate or unfairly discriminatory," the premiums charged were, in fact, significantly higher than those charged for comparable policies issued directly by insurers.

During the late 1960's and early 1970's, even after the 1970 and 1971 legislation precluding arbitrary rejections, cancellations, and non-renewals, there were widespread complaints from Maryland motorists that those kinds of rejections were still occurring and that as many as 100,000 Maryland motorists had been forced either to obtain insurance through the higher-cost assigned risk plan or to be uninsured. Responding to those complaints, Governor Mandel, in January, 1971, directed the Secretary of Licensing and Regulation to conduct

a thorough study of the overall automobile insurance problem. The Governor expressed particular concern over "increasingly frequent arbitrary cancellation of automobile insurance policies," the "soaring cost of this necessary protection," and the fact that "the average driver is finding it difficult to obtain coverage at regular rates."

The Secretary conducted the study and made some dramatic recommendations. Although those recommendations were not accepted in precisely the form presented, based on the Secretary's findings, the Governor presented comprehensive legislation to the 1972 session of the General Assembly. The bill, ultimately enacted as 1972 Md. Laws, ch. 73, dealt with the problem in four principal ways. First, it provided for compulsory purchased or self insurance; every owner of a motor vehicle required to be registered in Maryland was obliged to maintain certain minimum security with respect to the vehicle. That security had to include at least $40,000 of liability insurance and $2,500 of no-fault personal injury protection for medical expenses and wage losses. Second, it required insurers to offer certain other coverages in policies sold in Maryland. Third, in place of the assigned risk plan, it created MAIF as an entity (1) to provide insurance to persons who were unable to obtain insurance in the private market, and (2) to provide certain minimal compensation to persons injured by unidentified or uninsured motorists. Fourth, the law further circumscribed arbitrary underwriting criteria and, most relevant to this case, sharply curtailed the right of insurers to cancel or non-renew policies, required more detailed notice of an intent to cancel or non-renew a policy, and authorized the Insurance Commissioner, upon protest by insureds, to disallow underwriting decisions that the Commissioner found were contrary to law.

The named driver exclusion was a component of this fourth approach. It was primarily intended to avoid the prospect of an entire household being denied insurance—having a policy cancelled or non-renewed—because of the poor claims history or driving record of one or more, but less than all, of the prospective insureds in the household. *See Neale v. Wright,*

322 Md. 8, 21, 585 A.2d 196, 202 (1991). Through the enactment of a new § 240C–1(a) to Art. 48A, the Act provided that, in any case in which an insurer was authorized to cancel, nonrenew, or increase the premiums on an automobile liability insurance policy under which more than one person was insured, because of the claim experience or driving record of at least one but less than all of the persons insured:

"the insurer *shall* in lieu of cancellation, non-renewal, or premium increase offer to continue or renew the insurance, but to exclude from coverage, by name, the person or persons whose claim experience or driving record would have justified the cancellation or non-renewal."

(Emphasis added).

Section 240C–1(b) added:

"With respect to any person excluded from coverage under this section, the policy may provide that the insurer shall not be liable for damages, losses, or claims arising out of this operation or use of the insured motor vehicle, whether or not such operation or use was with the express or implied permission of a person insured under the policy."

Section 240C–1, as enacted in 1972, did not distinguish between personal or family policies and commercial policies but *required* the offering of a named driver exclusion endorsement in lieu of cancelling or non-renewing *any* automobile liability insurance policy. The section did *not* apply that requirement with respect to an application for an initial policy, however. Indeed, it said nothing about the decision to issue or not issue a *new* policy where one or more, but less than all, of the prospective insureds constituted a legitimately unacceptable risk. *See Parsons v. Erie Ins. Group*, 569 F.Supp. 572 (D.Md.1983).

Likely in response to *Parsons*, that matter was dealt with in 1984 by 1984 Md. Laws, ch. 663. The General Assembly there re-enacted the 1972 version of § 240C–1, with minor style changes, but added that, in cases where an insurer could legally refuse to issue a new policy of automobile liability insurance because of the claim experience or driving record of

one or more but less than all of the prospective insureds, the insurer *"may* issue the policy but exclude from coverage, by name, the person or persons whose claim experience or driving record could have justified the refusal to issue." (Emphasis added). Again, no distinction was drawn between personal or family policies and commercial policies. As to cancellation or non-renewal of an *existing* policy, the offer of a named driver exclusion was *mandatory,* as to *new* policies, it was *permissive;* but those provisions applied to *all* automobile liability insurance policies, including commercial policies.

The scope of the named driver exclusion, in both cancellation/non-renewal and initial policy cases, was enlarged in 1985. *See* 1985 Md. Laws, ch. 698. That Act provided that, under a named driver exclusion endorsement, coverage, other than personal injury protection and uninsured motorist protection not otherwise available, was excluded for *all* persons, including the excluded operator or user, the vehicle owner, family members residing in the household of the excluded operator, user, or vehicle owner, and any other person.[3] Subject to the contingent exceptions for personal injury protection and uninsured motorist benefits, there would be no coverage for anyone under the policy if the accident occurred while the vehicle was being driven by the excluded driver.

---

**3.** The relevant legislative history of that Act indicates that, when § 240C–1 was enacted in 1972, the industry, and apparently the Legislature, believed that, if and when the excluded person operated the vehicle, the vehicle became uninsured for all purposes, and that, as a result, "anybody injured by the operation of that vehicle would have no redress against the insurance company and this included passengers or pedestrians." *See* Statement of sponsor of HB 1360 (1985), Delegate John Astle; also House Economic Matters Committee Report on HB 1360. Two courts had ruled otherwise, however. *See Parsons v. Erie Ins. Group, supra,* 569 F.Supp. 572; *Miller v. Elliott* (Cir. Ct. Balto. Co. No. 83 L 1344 (1984)) (fact that excluded driver was driving vehicle did not preclude liability under uninsured motorist or personal injury protection coverages). The first reader version of HB 1360 would have barred all coverage. As amended during the legislative process, however, personal injury protection and uninsured motorist coverage was not excluded if those coverages were unavailable under any other automobile policy.

■ The statute that created the dispute now before us was enacted in 1989. *See* 1989 Md. Laws, ch. 367. The bill (HB 62) was a departmental one sponsored for the Insurance Commissioner by the Department of Licensing and Regulation, and it dealt with a number of insurance matters. Of importance here is the amendment made to then- § 240C–1(a)—the provision that *required* insurers to offer a named driver exclusion endorsement in lieu of cancelling or non-renewing an existing automobile liability insurance policy. The amendment limited that requirement to the case in which an insurer was authorized to cancel or non-renew or increase the premiums on an automobile liability insurance policy "issued in this State to any resident of a household." It thus deleted that requirement with respect to a commercial automobile liability policy.

These various provisions are now codified, with only style changes, in Maryland Code, § 27–606 of the Insurance Article.

Zelinski views the 1989 statute, now part of § 27–606(a), as *prohibiting* a named driver exclusion in commercial policies. Harleysville views it as simply repealing the *requirement* that it be offered in lieu of cancelling or non-renewing commercial policies, not as prohibiting the endorsement on a voluntary contractual basis. Harleysville has the better argument, for several reasons.

■ The issue is one of statutory construction: did the 1989 enactment make the offer (and acceptance) of a named driver exclusion endorsement unlawful in a commercial automobile insurance policy? The cardinal rule of statutory construction is to discern and implement the intent of the Legislature, gleaned first from the language of the statute. We can find nothing in the language of the 1989 law that would even suggest, much less make manifest, an intent to preclude the offer and acceptance of such an endorsement in a commercial policy. As noted earlier, we are unaware of any statute or any regulation of the Insurance Commissioner that ever made a named driver exclusion endorsement unlawful. Its use may have been rare in an era prior to 1972, when (1) there was no

compulsory insurance, and (2) the insurance companies were seemingly content to cancel and non-renew policies for a host of inappropriate reasons, leaving motorists to replace that insurance through the higher-cost assigned risk program. There is some indication in the legislative history to the 1972 law, however, that, even then, at least one company, Travelers Insurance Company, offered that endorsement in automobile liability insurance policies. *See* Legislative Council Special Committee on No–Fault Insurance, Minutes of Meeting of January 31, 1972, at 2.

The 1972 law did not purport to repeal any impediment to such an endorsement or to create the endorsement anew out of whole cloth, but rather to mandate that it be offered in lieu of cancellation or non-renewal. If the offer of such an endorsement was not unlawful before being made mandatory in 1972, restricting the *requirement* of its offer to family policies would certainly not make it unlawful with respect to commercial policies. Indeed, in 1984, the Legislature expressly authorized insurance companies to offer a named driver exclusion endorsement with respect to a *new* policy, and that authority is retained with respect to both family and commercial policies.

█ It would surely not be logical to assume an intent on the part of the Legislature to expressly allow such an endorsement in lieu of declining to issue a *new* commercial policy but to forbid its use in lieu of cancelling or non-renewing an *existing* one. What possible reason could there be for such a contradiction? Far more rational is to infer the more limited purpose expressed in the title to the 1989 Act—"clarifying that certain motor vehicle liability insurance policy exclusions *must only be offered* to certain insureds." (Emphasis added).[4]

---

4. To assume any broader intent could well create a Constitutional impediment. Article III, § 29 of the Maryland Constitution requires that every law embrace one subject described in its title. There is no indication in the title to the 1989 Act that a named driver exclusion endorsement, theretofore required to be offered in lieu of cancelling or non-renewing a commercial policy, was thenceforth to be prohibited and unlawful. If that is how the law is to be construed, it would enact

Finally, it is important to recall that the named driver exclusion endorsement, though obviously serving to exclude from coverage one or more prospective insureds who, because of their claim experience or driving record, would be appropriately rejected in any event under reasonable underwriting criteria, actually helps to promote the overriding goal of compulsory insurance by affording an alternative to cancellation or non-renewal of the entire policy, which would then require *all* of the insureds, including those whom the insurer would be willing to insure, to seek replacement insurance. *See Neale v. Wright, supra,* 322 Md. at 21, 585 A.2d at 202 ("Allowing a driver to be specifically excluded avoids cancellation or non-renewal of policies and permits the other family members to retain the required security on the family car. Without the named driver exclusion provision, insurance might be difficult to obtain for many vehicles."). That endorsement, even with respect to commercial policies, is thus unlike the exclusions or limitations that we have found inconsistent with the mandate of compulsory insurance and, for that reason, unauthorized and invalid. *See Nationwide Mutual Ins. Co. v. Miller,* 305 Md. 614, 620, 505 A.2d 1338, 1341 (1986). The Legislature clearly recognized the supportive value of the endorsement in 1972 and 1984, and there is no reason to suppose that, in 1989, it entertained a dramatically different view.

For these reasons, we hold that the Court of Special Appeals erred in its determination that a named driver exclusion endorsement is not allowed in commercial automobile liability policies and that the endorsement added to the policy in question here is void. The endorsement is not inconsistent with or prohibited by Maryland law, and is therefore valid. Because of *our* conclusion to that effect, it is unnecessary for us to address whether the Zelinskis are bound by the similar judgment of the U.S. District Court.

---

a prohibition not even remotely described in its title. Whenever possible, we opt to construe a statute so that it is consistent with the Constitution and does not reach illogical results.

**JUDGMENT OF COURT OF SPECIAL APPEALS RE-VERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM JUDGMENT OF CIRCUIT COURT FOR CECIL COUNTY; COSTS IN THIS COURT AND IN COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENTS.**