474 A.2d 224

**FEDERAL KEMPER INSURANCE COMPANY**

v.

**William Joseph SCHNEIDER, et ux.**

No. 55, Sept. Term, 1984.

Court of Special Appeals of Maryland.

May 4, 1984.

692

M. Natalie McSherry, Baltimore, with whom were White-
ford, Taylor, Preston, Trimble & Johnston, Baltimore, on
brief, for appellant.

Robert W. MacMeekin, Baltimore, with whom were Fine,
Gibbons & MacMeekin, P.A., Baltimore, on brief, for appel-
lees.

Argued before WILNER, ADKINS and GETTY, JJ.

ADKINS, Judge.

Baseball has its designated hitters and the insurance
industry has its designated insureds. The question before
us is whether appellee William Joseph Schneider falls within
the latter category for purposes of uninsured motorist
coverage under a family automobile policy issued to his
mother, Shirley A. Schneider, by appellant Federal Kemper
Insurance Company. We are constrained to hold that appel-
lee William strikes out. But before explaining the reasons
for our call, we must address a procedural problem produc-
ed by Md.Rule 605 a.

### Rule 605 a

As the titling of this appeal shows, there are two appel-
lees: William Schneider and his wife, Bonnie. They insti-
tuted these proceedings by filing suit against Federal Kem-
per in the Superior Court of Baltimore City (now the Circuit
Court for Baltimore City). In Count I of the Declaration
William alleged that he was covered by the uninsured
motorist provisions of his mother's policy, that he had
reported his loss to Federal Kemper, and that Federal
Kemper had refused to pay. He asserted that this refusal
was "in breach of [its] contract of insurance of which [he]
was an intended third-party beneficiary" and claimed dam-
ages of two million dollars. Count II incorporated by

reference the allegations of Count I and further alleged a claim by William and Bonnie for loss of consortium. Damages of one hundred thousand dollars were claimed.

The trial court held that William was indeed "a designated insured" covered by the policy and that Federal Kemper was liable under it. The parties thereupon stipulated "that the amount owed to the Plaintiff, William Joseph Schneider ... is Twenty Thousand Dollars...." Judgment for "the Plaintiff" was entered in that amount, plus costs. The separate loss of consortium claim was not considered; no judgment one way or the other was entered as to it. In short, it was not disposed of.

■ Maryland Rule 605 a provides that an adjudication of less than all the claims asserted in an action does not terminate the action (*i.e.* produce an appealable final judgment) as to any of the claims unless the trial court determines there is "no just reason for delay" and expressly directs the entry of judgment on the adjudicated claim(s). That was not done here. Consequently, there is no final judgment from which Federal Kemper may appeal and we lack jurisdiction to hear the purported appeal. *Happy 40 Inc. v. Miller*, 57 Md.App. 589, 471 A.2d 333 (1984).

■ Ordinarily, we would dismiss this appeal without further ado. But there are circumstances under which an appellate court may address the substantive issues presented, despite the existence of a procedural defect requiring the dismissal of the appeal. One of these occurs when "the interest of judicial economy" so requires. *Sigma Reproductive Health Center v. State*, 297 Md. 660, 675, 467 A.2d 483 (1983). In the case before us, the question of William Schneider's status as a "designated insured" was raised and decided. That question was fully briefed and argued before us. The way in which we shall decide the question renders moot the loss of consortium claim. Therefore, we shall discuss it, even though our comments concerning it may be dicta in the technical sense. *Eastgate Associates v. Apper*,

276 Md. 698, 704, 350 A.2d 661 (1976). *Quigley v. Quigley,*
54 Md.App. 45, 57–59, 456 A.2d 1305 (1983).

## William Schneider As "Designated Insured"

The parties have agreed to the facts pertaining to this
issue. William was injured while a passenger in an automo-
bile involved in a single car accident. The vehicle, which
was not insured, was not owned by any member of his
family. At the time of the accident, he was not resident in
his mother's household. William's claim against Federal
Kemper is based solely on the contention that he was
covered under the uninsured motorist endorsement attached
to the policy Federal Kemper issued to his mother, Shirley.
His name does not appear on the policy.

The policy was issued to Shirley in 1976 when William
was too young to drive. It contained uninsured motorist
coverage (Coverage U) which provided, *inter alia,* that
"insured means ... the named insured and any rela-
tive...." It also contained an uninsured motorist endorse-
ment which in pertinent part warned that "[t]he endorse-
ment replaces any other provisions of the policy, including a
coverage part forming a part thereof, [*e.g.* Coverage U]
affording similar insurance with respect to any damages
arising out of the ownership, maintenance or use of an
uninsured highway vehicle...." The endorsement defined
"an insured" as, *inter alia,* "the named insured and any
designated insured and, while residents of the same house-
hold, the spouse and relatives of either ..." and defined
"designated insured" as "an individual named in the sched-
ule under Designated Insured...." The endorsement con-
tained a heading "SCHEDULE" with space for inserting
the name of a "Designated Insured". The space was blank.

In 1980, when William was 17, Federal Kemper issued to
Shirley a change of declarations endorsement. This provid-
ed liability coverage under that policy with respect to a
specified vehicle for an occasional young male driver. An
additional premium was charged for that coverage, and
Shirley paid this at subsequent times when the policy was

renewed. The uninsured motorist endorsement, however, was not changed. Specifically, no name of any "designated insured" was inserted in the blank space on the schedule.

William argues, nevertheless, that when he was added to the policy as an occasional young driver, an ambiguity was created as to the extent of coverage, and that this ambiguity should be resolved in his favor, citing *Truck Insurance Exchange v. Marks Rentals, Inc.*, 288 Md. 428, 435, 418 A.2d 1187 (1980). In that case, the question was whether coverage was limited to vehicles rented by Marks Rentals under a specific rental agreement or whether it extended to any passenger vehicles used by Marks in connection with its automobile rental business. The endorsement involved made Marks Rental "AN ADDITIONAL INSURED FOR PASSENGER CARS HE [*sic*] MAY RENT TO OTHERS, OR OPERATE UNDER HIS [*sic*] THRIFTY RENT-A-CAR FRANCHISE...." 288 Md. at 431, 418 A.2d 1187. The Court of Appeals held this language to be ambiguous as to the extent of coverage and observed "that where one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against that party." *Id.* at 435, 418 A.2d 1187.

■ The problem for William is that the principle we have just quoted applies only when an insurance policy is ambiguous. The one before us is not. It unambiguously provides that the uninsured motorist endorsement "replaces any other provisions of the policy."[1] It unambiguously limits the uninsured motorist coverage (under the agreed facts of this case) to a "designated insured". It unambiguously requires the "designated insured" to be named on the schedule. The schedule is unambiguously blank. Under

---

1. The trial judge seems to have overlooked this language of the endorsement. He did not mention it, nor did he mention its other provisions. He focused only on the general definition of "insured" and on language contained in Coverage U—language obviously superseded by the endorsement.

ordinary principles of contract law, the fact that Shirley paid an additional premium to cover William for liability purposes does not permit us to rewrite the plain language of the policy to extend the uninsured motorist coverage beyond its clear extent. "The identity of those individuals specifically listed in the policy—that is, the named and designated insured—is self-evident and leaves no latitude for disagreement over whether such a person is an insured." A. Widiss, *A Guide to Uninsured Motorist Coverage,* § 2.5 (1969) [footnote omitted] p. 25.

In *Kaysen v. Federal Insurance Company,* 268 N.W.2d 920 (Minn.1978) an insurance policy provided liability coverage for a named corporate insured and, under certain circumstances, for an executive officer of the corporation while using a non-owned automobile on business of the corporation. The policy also included an uninsured motorist provision protecting "the named insured and any designated insured and, while residents of the same *household,* the *spouse* and *relatives* of either...." 268 N.W.2d at 923 [emphasis in original]. Distel, an executive officer of the insured corporation, and his wife were killed by an uninsured motorist while walking along a street. They had abandoned an automobile owned by the insured corporation and regularly used by Distel on company business. Distel's administrator argued that the policy was ambiguous. It provided for personal injury coverage, but a corporation could not sustain personal injury. The Supreme Court of Minnesota found the policy "confusing with respect to the coverage afforded the corporation as a named insured under the uninsured motorist coverage ..." but found "no ambiguity that the class of persons protected as named insureds did not include corporate officers and their spouses." It concluded that

any ambiguities that do exist in the policy have no bearing on the status of the Distels. We therefore will not attempt to rewrite the policy to include the decedents within the class of persons protected when they have

been excluded by the plain and ordinary language of the uninsured motorist coverage provision.

268 N.W.2d at 924. *Also see Polzin v. Phoenix of Hartford Insurance Companies*, 5 Ill.App.3d 84, 283 N.E.2d 324 (1972).

■ In the case before us, William also has been excluded by the plain, ordinary and unambiguous language of the uninsured motorist endorsement. We cannot rewrite the policy at his behest. *Canaras v. Lift Truck Services*, 272 Md. 337, 350, 322 A.2d 866 (1974).

Additionally, William contends that insurance policy language in conflict with minimum state requirements is ineffective and void and in such a case the minimum state requirements should be substituted for the policy provisions. *Pennsylvania National Mutual Casualty Insurance Company v. Gartelman*, 288 Md. 151, 416 A.2d 734 (1980). He argues that Code Art. 48A, § 541 requires uninsured motorist coverage in each policy of motor vehicle insurance issued in this state, and that because he was an insured for liability purposes under the policy, he must be covered for insured motorist coverage as well.

■ The problem with this argument is that it is not before us. It was not raised below. William's motion for summary judgment and its accompanying affidavit raise only the "designated insured" question. The holding of the trial court was that William was the "designated insured". Under Md.Rule 1085, therefore, ordinarily, we would not consider the issue.

■ Even were we disposed to exercise our discretion and decide it for the guidance of the lower court, *Chas. T. Cirelli & Sons v. Harford Co.*, 26 Md.App. 491, 497, 338 A.2d 400 (1975), we would be faced by another obstacle regarding the scope of our review in this case. This is an expedited appeal under Md.Rule 1029. Section b of that rule requires the party to "file with the Clerk an agreed statement of the case...." They did so. Among the provisions. of that statement appears the following:

Plaintiff [William] contends only that he is entitled to coverage under the uninsured motorist endorsement of his mother's policy by virtue of being a "designated insured" under that policy. He does not claim entitlement to uninsured motorist coverage as any other class of person insured under that endorsement.

The trial court held that William was the "designated insured" under the policy. That specific issue and that alone was briefed and argued by Federal Kemper. William has attempted to inject another issue—whether public policy, as stated in Art. 48A, § 541(c) requires that he be afforded uninsured motorist coverage because he occupied the status of an insured under the liability portion of the policy. That question is beyond the scope of the issue the parties agreed to submit to us. We shall not consider it.

For the reasons we have stated, this appeal must be dismissed. When the trial court proceeds to enter a final judgment by disposing of the claims presented by both Counts I and II of the Declaration, it should do so by entering judgment in favor of Federal Kemper.

APPEAL DISMISSED.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEES.