493 A.2d 405

**The ERIE INSURANCE EXCHANGE**

v.

**RELIANCE INSURANCE COMPANY, et al.**

**No. 1396, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 11, 1985.

Paul H. Ethridge, Rockville (McCarthy, Wilson & Ethridge, Rockville, on brief), for appellant.

Hartman J. Miller, Baltimore (Rollins, Smalkin, Richards & Mackie, Baltimore, on brief), for appellee, Reliance Ins. Co.

Argued before WILNER, BLOOM and ROBERT M. BELL, JJ.

WILNER, Judge.

On the evening of March 14, 1982, Robert Aiello, without permission or authority, borrowed a Jeep that belonged to his friend, Charles Muhly. The actual, registered owner of the Jeep was Charles's mother, Thelma Muhly. At some point in the evening, Aiello picked up another friend, Gregory Orsini. While crossing the Severn River bridge in Annapolis, Aiello lost control of the vehicle, causing it to overturn. Orsini was thrown from the vehicle and injured.

The Jeep was insured under a policy issued by Reliance Insurance Company (Reliance) to Thelma Muhly; Aiello had a policy issued by Amica Insurance Company; and Orsini was covered under a policy issued by Erie Insurance Exchange (Erie) to his father, Fred Orsini.

Desirous of recompense for his injuries, Orsini filed suit in the Circuit Court for Anne Arundel County against the Muhlys, Aiello, and all three insurance companies. He ultimately pled six counts: Count I was against Aiello for negligence; Count II was against the Muhlys for negligently entrusting the Jeep to Aiello, Orsini averring that Aiello had used the Jeep with their permission; Counts III, IV, and V were against the three insurance companies, respec-

tively, Orsini claiming as a third party beneficiary of the insurance contracts between them and their respective insureds; Count VI was against all three insurance companies. Alleging that the companies had taken inconsistent positions on whether Aiello had permission to use the Jeep and thus as to coverage under the policies, Orsini sought a declaratory judgment determining "which insurance company is the proper insurance carrier, and whether said insurance coverage is provided to the Defendants pursuant to liability provisions of that policy or the uninsured motorist provision of that policy."

Erie filed a cross-claim, alleging that the Reliance and Amica policies afforded primary coverage and asking that those companies provide a defense for and indemnify the Muhlys and Aiello.

On September 18, 1984, the court determined that, at the time of the accident, Aiello was not operating the vehicle with the permission of the Muhlys or in the reasonable belief that he had such permission. Accordingly, it ordered that there was no coverage afforded under either the Reliance or Amica policies, and that Erie was the uninsured motorist carrier for Orsini. Nine days later, declaring pursuant to Md.Rule 2–602 that there was no just cause for delay, the court entered final judgment "as to the Cross-Claim filed herein by the defendant, Erie Insurance Exchange." The intention, clearly, was to adjudicate the questions of coverage, as raised in Counts III through VI of Orsini's various complaints and in Erie's cross-claim, and to permit an appeal to be filed with respect to those matters.[1] Although the docket could have been a bit clearer, we shall consider that a final, appealable judgment has been entered

---

1. Earlier in the proceeding, the court had granted Reliance's motion for summary judgment as to Count IV and Amica's motion for summary judgment as to Count III, although no actual judgments were entered. In May, 1984, the court entered judgment, in favor of Amica as to Count VI and as to Erie's cross-claim.

with respect to Counts III, IV, and VI, and as to Erie's cross-claim.

Erie has indeed appealed, raising the single question of whether the circuit court erred in concluding that it was obligated to provide the primary uninsured motorist coverage to Orsini.

All parties now agree, for purposes of this appeal, that Aiello's insurer, Amica, has no responsibility to Orsini. The fight is between Erie and Reliance. It is further conceded that Orsini does have uninsured motorist protection under the Erie policy. The precise point of dispute is whether the uninsured motorist coverage under the Reliance policy also extends to Orsini. If it does, Reliance would be the primary insurer as to Orsini and Erie would be the "excess" insurer; if it does not, Erie has sole responsibility as to Orsini.

The question of coverage by Reliance breaks down into two parts. There is first the question of whether Orsini is covered under the policy as written. If so, that is the end of the matter. If not, there is the question of whether the policy, as written, affords less coverage than is mandated by law—*i.e.*, whether various provisions of Md.Code Ann. art. 48A *require* Reliance to cover persons such as Orsini and thus effectively provide such coverage by operation of law.

Insurance policies, like the regulations of the Internal Revenue Service, are often not the easiest things to read and understand. Definitions tend to chase each other. So it is here. Part I of the Uninsured Motorist endorsement obligates Reliance to pay all sums which "the insured" is entitled to recover from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage caused by accident and arising out of the ownership or use of the uninsured highway vehicle. Part II defines "persons insured" as (a) the named insured, a designated insured, and, if resident in the same household, the spouse or relative of the named or designated insured, and (b) "any

other person while occupying an *insured highway vehicle."* (Emphasis added.)

Orsini obviously is not a named or designated insured under the Reliance policy, or the spouse of one. To see if he comes within (b), we have to determine whether he was occupying an "insured highway vehicle." That term is defined in Part V. It *includes* a highway vehicle "described in the schedule as an insured highway vehicle to which the bodily injury and property damage liability coverage of the policy applies" but *excludes* from that inclusion "a vehicle unless being used by or with the permission of the named or designated insured" or the spouse of such an insured.

■ Putting this all together, it is apparent that Orsini is not an insured under the uninsured motorist endorsement as written. Because the Muhly vehicle was not being used by or with the permission of the Muhlys, it was not an "insured highway vehicle"; Orsini, therefore, was not "occupying an insured highway vehicle," and thus was not a "person insured."

We look, then, to see if the policy, so construed, provides less coverage than is mandated by law.

The key provision relied upon by Erie is Md.Code Ann. art. 48A, § 541(c)(2), which mandates uninsured motorist coverage in every automobile insurance policy and provides, in relevant part:

"In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State ... shall contain coverage, in at least the amounts required under Title 17 of the Transportation Article, for damages which *the insured* is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle.... In no case shall the uninsured motorist coverage be less

than the coverage afforded *a qualified person* under Article 48A, §§ 243H and 243–I." (Emphasis added.)

The statute does not define the term "the insured." Eschewing the most sensible meaning—the "insured" under the policy—Erie argues that it must also include whoever would be "a qualified person" under §§ 243H and 243I. The logic of that argument escapes us, as the reference to "qualified person" in § 541(c)(2) is in the context of the amount and scope of coverage required to be afforded to an "insured" rather than defining who is an "insured." [2]

■ Even if we were to credit the point, however, it would avail Erie naught. The term "qualified person," for purposes of §§ 243H and 243I, is defined in § 243L, which specifically excludes from the definition "an insured under a policy provision providing coverage for damages sustained by the insured as a result of the operation of an uninsured motor vehicle...." The function of that provision is to preclude a person from making an uninsured claim against MAIF if the person, in fact, has other uninsured motorist coverage; in that circumstance, he or she is not a "qualified person." Orsini, as we have seen, has uninsured motorist coverage under the Erie policy. He is therefore not a "qualified person" under §§ 243L, H, or I, and, even under Erie's theory, is therefore not an "insured" under § 541(c)(2).

For these reasons, we find no error in the judgment entered below.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

2. Sections 243H and 243I deal with claims against the Unsatisfied Claim and Judgment Fund part of the Maryland Automobile Insurance Fund (MAIF). Section 243H(a)(1) makes clear that only a "qualified person" may successfully claim against MAIF under those provisions. Section 243I prescribes the maximum amounts that may be recovered from MAIF on an uninsured claim. That, we think, is the intended reference in § 541(c)(2).