973 A.2d 243

**MARYLAND AUTOMOBILE INSURANCE FUND**

v.

**Conchita BAXTER, et al.**

**No. 0530, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

June 9, 2009.

148

George W. Fanshaw, Timonium (Gloria W. Shelton, Annapolis, Douglas F. Gansler, Atty. Gen., on the brief, Baltimore), for appellant.

Andrew Janquitto (Mudd, Harrison & Burch, LLP, on the brief), Towson, for appellee.

Panel: SALMON, DEBORAH S. EYLER and GRAEFF, JJ.

SALMON, Judge.

The main question presented in this appeal is whether Maryland law requires an automobile insurer to provide uninsured motorist coverage to an uninsured stranger/pedestrian who is struck by an automobile driven by a person excluded under the insurer's policy. We shall answer that question in the negative, as did the Circuit Court for Baltimore City.

# I.

On January 21, 2007, Teresa Ann Palugi owned a 1998 Jeep Grand Cherokee that she insured with Interstate Automobile

Insurance Company ("Interstate"). When Mrs. Palugi applied for insurance, Interstate discovered that William Palugi, her husband, did not have a valid driver's license. Because Interstate's underwriting rules do not allow it to insure someone without a valid driver's license, Mrs. Palugi agreed to exclude her husband as an insured. Accordingly, the Interstate policy was issued with a "named driver's exclusion" that listed William Palugi as an excluded driver. Interstate's policy read, in pertinent part, as follows:

When a motor vehicle covered under the policy is operated by an excluded operator or user, ALL COVERAGE provided by the [Interstate] policy is EXCLUDED for the following:

1. The excluded operator or user;

2. The vehicle owner(s);

3. Family members residing in the household of the vehicle owner(s); and

4. *Any other person, except for Personal Injury Protection benefits and Uninsured Motorist coverage if such insurance is not available to that other person under another motor vehicle policy.*

This exclusion applies whether or not the operation of the motor vehicle by the named excluded operator or user was with the express or implied permission of an insured person.

(Emphasis added.)

On January 21, 2007, Stephanie Scott was struck and killed by the 1998 Jeep Grand Cherokee owned by Mrs. Palugi. At the time of the accident, the Jeep was being driven by William Palugi, the excluded driver. Ms. Scott did not know the Palugis prior to the accident. Her only contact with the Palugis was that she was struck by a vehicle owned by Mrs. Palugi and driven by William Palugi.

On January 11, 2008, Conchita Baxter, as personal representative of Ms. Scott's estate, and Shirley Goldsborough, Ms. Scott's mother, filed a complaint in the Circuit Court for

Baltimore City asking the court to decide whether they were entitled to coverage for the January 21, 2007 accident under the policy issued by Interstate, or whether they were entitled to recovery from the Maryland Automobile Insurance Fund. According to the complaint, the death of Ms. Scott was solely caused by the negligence of William Palugi.

The Maryland Automobile Insurance Fund (MAIF) was named as a defendant because the uninsured division of MAIF is required to investigate, pay, and otherwise administer claims by Maryland residents who are involved in motor vehicle accidents with uninsured motorists and who have no other source of recovery. The type of claims that can be made against the uninsured division of MAIF are ones that arise when an accident is caused by an unidentified motorist, a disappearing motorist, or a known uninsured motorist.

Both MAIF and Interstate filed motions for summary judgment. The circuit court granted Interstate's motion and denied the motion filed by MAIF. In a memorandum and order, the circuit court declared the rights of the parties as follows:

The plaintiffs' decedent was not an insured under [Interstate's] policy and nothing in the policy or the statutes relied upon by MAIF entitled plaintiffs to recover under the UM coverage of that policy. See, *Erie v. Ins. Exchange v. Reliance Ins. Co. [Erie Ins. Exchange v. Reliance Ins. Co.]*, 63 Md.App. 612, 493 A.2d 405 (1985). The fact that the deceased was in contact with the insured automobile at the time of collision does not qualify her as a person "occupying" the automobile. MAIF relies upon the language in the exclusions and exceptions to exclusions in the policy and the statutes. To be excluded one must first be included, in this case as an insured. One can not become an insured under [a] policy or statutory language which provides for exclusions from coverage or exceptions to exclusions. See e.g. *American Home Assurance v. Osbourn*, 47 Md.App. 73 at 82, 422 A.2d 8 (1981)[1980].

Ms. Baxter,[1] along with MAIF, filed a timely appeal to this Court.

## II.

In its opening brief, MAIF did not contend that coverage was provided to the plaintiffs under the terms of Interstate's policy. Instead, it contended only that the terms of Interstate's policy conflicted with provisions of the Maryland Uninsured Motorist Statute as codified in the Insurance Article of the Maryland Code Ann. (2006 Repl.Vol., 2008 Supp.).[2] Ms. Baxter makes a similar contention but she also argues, in the alternative, that the Interstate policy, as written, did provide coverage to Ms. Scott. In its reply brief, MAIF asserted for the first time that the insurance policy issued by Interstate did provide coverage, albeit for a different reason than that advanced by Ms. Baxter.

## III.

### MAIF's Claim That Interstate's Policy, as Written, Provided Coverage to Ms. Scott or Persons Claiming Through Her.

Before setting forth the pertinent parts of Interstate's policy, it is important to bear in mind that uninsured motorist coverage is first-party coverage, *i.e.,* a promise by an insurer "to pay its own insured, rather than a promise to pay some third party." *Bausch & Lomb, Inc. v. Utica Mutual Ins. Co.,* 355 Md. 566, 583, 735 A.2d 1081 (1999) (quoting *Reese v. State Farm Mutual Auto. Ins.* 285 Md. 548, 552, 403 A.2d

---

1. Ms. Goldsborough did not file a brief in this Court. Ms. Baxter filed a brief in which she claims that the motions judge erred in granting Interstate's motion. It is not clear why Ms. Baxter filed a brief. In the trial court, Ms. Baxter and Ms. Goldsborough took the position that it did not matter which defendant provided coverage. Their indifference was understandable because both MAIF and Interstate provided the same maximum UM coverage, i.e., $20,000.00.

2. All statutory references in this opinion, unless otherwise noted, are to the Insurance Article of the Maryland Code (2008 Supp).

1229 (1979)). To make a successful uninsured motorist ("UM") claim, the plaintiff must prove either: 1) that he or she was insured under the terms of the policy issued by the defendant's insurance company or 2) that if the insurance policy written by the defendant insurer had provided the coverage required by section 19–509 of the Insurance Article, he or she would have been insured. *See Blue Bird Cab Co., Inc., v. Amalgamated Casualty Insurance Co.,* 109 Md.App. 378, 388, 675 A.2d 122 (1996) (citing *Jennings v. GEICO,* 302 Md. 352, 356, 488 A.2d 166 (1985)).

The UM coverage provided by Interstate's policy was set forth in part C, which read in pertinent part:

## INSURING AGREEMENT

"We" will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

1. "Bodily injury" sustained by an "insured" and caused by an accident: and

2. "Property damage" caused by an accident. . . .

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

The following definitions apply to part C:

\* \* \*

"Insured" means:

1. "You" or any "family member";

2. Any other person "occupying" "your covered auto"; or

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

In insurance parlance, the three categories of insured just mentioned are often called Clause 1, 2 and 3 insured. *See*

*Mundey v. Erie Insurance Group,* 396 Md. 656, 667–68, 914 A.2d 1167 (2007).

 Mrs. Palugi was the named insured in Interstate's policy. Ms. Scott was clearly not a Clause 1 insured. She was not "You," which is defined in the policy as meaning the named insured and the named insured's spouse. Moreover, Ms. Scott was not a "family member," which the policy defines as a person related by blood, marriage or adoption to the named insured or the named insured's spouse.

In their opening briefs, neither Ms. Baxter nor MAIF contended that Ms. Scott was a Clause 1, Clause 2, or Clause 3 insured. More specifically, neither Ms. Baxter nor MAIF contended that Ms. Scott was "occupying" the Jeep at the time the accident occurred. The policy defines "occupying" as "in or upon or entering into or alighting from." In its reply brief, however, MAIF contends that Ms. Scott was "occupying" the Jeep that struck her. It devotes only two sentences in support of that argument, saying: "Ms. Scott was crossing Greenmount Ave when she was struck by one of the vehicles listed in the policy. Since she was struck by the vehicle, she certainly was upon the vehicle at the time of the accident."

 Ordinarily, we will consider as waived any issue not raised by an appellant in its opening brief. *See Oak Crest Village, Inc. v. Murphy,* 379 Md. 229, 241–42, 841 A.2d 816 (2004) ("An appellant is required to articulate and adequately argue all issues the appellant desires the appellate court to consider in the appellant's initial brief. It is impermissible to hold back the main force of an argument to a reply brief and thereby diminish the opportunity of the appellee to respond to it.").

But even if MAIF had made its "occupying" argument in its initial brief, the argument would not succeed. *See generally,* R.P. Davis, Annotation, *Scope of Clause of Insurance Policy covering injuries sustained while "in or on" or "in or upon" motor vehicle,* 39 A.L.R.2d 952 § 4 (1955).

Although there are numerous cases in this country dealing with the meaning of the word "upon" in the context of a policy defining "occupying" in a manner similar to the definition set forth in Interstate's policy, MAIF cites no case (nor have we found one) from any jurisdiction supporting its contention that a pedestrian, who had no prior connection with the insured vehicle, was nevertheless "occupying" that vehicle simply because he or she was struck by it.

In *Utica Mutual Insurance Co., v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005, 1008–09 (1984), the court said:

Among those jurisdictions which have resolved the issue, there seems to be two basic approaches to interpreting the definition of "occupying". The first is the strict literal approach whereby a person cannot be "occupying" a vehicle unless he, or part of him is inside or in physical contact with the vehicle. *See Testone v. Allstate Insurance Co.,* 165 Conn. 126, 328 A.2d 686 (1973); *Jarvis v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Co.,* 244 N.C. 691, 94 S.E.2d 843 (1956); *Green v. Farm Bureau Mutual Auto. Insurance Co.,* 139 W.Va. 475, 80 S.E.2d 424 (1954). *See also Greer v. Kenilworth Insurance Co.,* 60 Ill.App.3d 22, 17 Ill.Dec. 347, 376 N.E.2d 346 (1978). The second approach, focuses upon whether the person claiming benefits was performing an act (or acts) which is (are) normally associated with the immediate "use" of the auto. *See Nickerson v. Citizens Mutual Insurance Co.,* 393 Mich. 324, 224 N.W.2d 896 (1975); *Hathcox v. Liberty Mutual Insurance Co.,* 90 Mich.App. 511, 282 N.W.2d 374 (1979); *Sayers v. Safeco,* 192 Mont. 336, 628 P.2d 659 (1981); *Rau v. Liberty Mutual Insurance Co.,* 21 Wash.App. 326, 585 P.2d 157 (1978); *Sentry Insurance Co. v. Providence Washington Insurance Co.,* 91 Wis.2d 457, 283 N.W.2d 455 (1979); *Robson v. Lightning Rod Mutual Insurance Co.,* 59 Ohio App.2d 261, 393 N.E.2d 1053 (1978).

We believe that the second approach represents the better view, for it is most consistent with the Uninsured Motorist Act, which we have held was intended to protect those "persons who while lawfully using the highways themselves

suffer grave injuries through the negligent use of those highways by others." (Emphasis omitted). *Pattani v. Keystone Insurance Co.*, 426 Pa. 332, 338, 231 A.2d 402, 404 (1967), quoting *Katz v. American Motorist Insurance Co.*, 244 Cal.App.2d 886, 53 Cal.Rptr. 669 (1966). In light of this purpose we believe a liberal interpretation of the term "occupying" is required and we cannot accept the narrow and restrictive interpretation which has been urged upon us by appellant.

Although not cited by the *Utica Mutual Court*, it is clear that Maryland is among the jurisdictions that utilize the approach that focuses upon whether, at the time of the accident, the claimant was performing an act or acts normally associated with the immediate use of the automobile. *See Goodwin v. Lumbermens Mutual Casualty Co.*, 199 Md. 121, 85 A.2d 759 (1952). The issue in *Goodwin* was whether the plaintiffs were "upon" the insured vehicle when it was struck. One of the claimants in *Goodwin* asserted that she was "upon" the vehicle even though she was a pedestrian who was not touching the insured vehicle at the time of the accident. The court allowed the pedestrian [and other claimants who were with her] to recover based on two factors, viz: the women were in close proximity to the vehicle at the time of the collision, *and* they were persons who intended to use the vehicle as a passenger or driver. 199 Md. at 133, 85 A.2d 759. *See also Rednour v. Hastings Mutual Insurance Co.*, 468 Mich. 241, 661 N.W.2d 562, 566–67 (2003) (rejecting an interpretation of the word "upon" that "will provide (and require payment for) supplemental coverage in the form of uninsured motorists benefits for anyone who happened to be near the covered automobile and injured when the auto is struck by an uninsured motorist even though the person has no connection with the owner, named insured, or covered vehicle.").

We hold that a pedestrian who has had no connection with the insured vehicle, except for the fact that he or she was struck by it, was not "upon" the vehicle and thus was not "occupying" it as that latter term is used in Clause 2 of Interstate's policy.

## IV.

## Under The Insurance Code, Who Must Be Afforded UM Coverage?

Much of the language used in the excluded driver's endorsement found in the Interstate policy and quoted, *supra*, is taken almost verbatim from section 27–609(c)(4) of the Insurance Article. Section 27–609 reads, in material part, as follows:

27–609. Exclusion of named driver

(a) Cancellation, nonrenewal, or premium increase.—

(1)(i) This paragraph applies to a private passenger motor vehicle liability insurance policy issued in the State under which more than one individual is insured.

(ii) If an insurer is authorized under this article to cancel, nonrenew, or increase the premiums on a policy of private passenger motor vehicle liability insurance subject to this paragraph because of the claim experience or driving record of one or more but less than all of the individuals insured under the policy, the insurer, instead of cancellation, nonrenewal, or premium increase, shall offer to continue or renew the insurance, but to exclude all coverage when a motor vehicle is operated by the specifically named excluded individual or individuals whose claim experience or driving record could have justified the cancellation, nonrenewal, or premium increase.

\* \* \*

(c) Policy endorsements.—A policy described in subsection (a) or (b) of this section may be endorsed to exclude specifically all coverage for any of the following when the named excluded driver is operating a motor vehicle covered under the policy whether or not that operation or use was with the express or implied permission of an individual insured under the policy:

(1) the excluded operator or user;

(2) the vehicle owner;

(3) family members residing in the household of the excluded operator or user or vehicle owner; and

(4) any other person, except for the *coverage required by §§ 19–505 [dealing with Personal Injury Protection] and 19–509* of this article if that coverage is not available under another motor vehicle policy.

(Emphasis added.)

The aforegoing statutory provision, as applied to this case, means that an exclusion is invalid to the extent that it attempts to exclude certain persons from collecting the UM coverage required by section 19–509.

We turn next to the question: What coverage is required by section 19–509?

Section 19–509(c) specifies who must be provided with UM coverage in Maryland. That subsection reads:

(c) Coverage required.—In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:

(1) *the insured is entitled to recover* from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

(2) a surviving relative of the insured, who is described in § 3–904 of the Courts Article, *is entitled to recover from the owner or operator of an uninsured motor vehicle* because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.

(Emphasis added.)

As can be seen, companies that write insurance policies in Maryland are required to provide UM coverage for damages, subject to policy limits, that either an insured or a surviving relative of an insured "is entitled to recover from the owner or

operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle." The critical words in section 19–509(c)(1) are "insured is entitled to recover."

The uninsured motorist statute does not define the word "insured," but this is not uncommon. *See Alan Widiss, Uninsured and Under Insured Motorist Coverage* (Rev.2nd. Ed. 1999), section 2.8. As will be seen, however, Maryland precedent provides us with the meaning of the word "insured" as it is used in section 19–509(c).

■ The Court of Appeals interpreted section 19–509(c)(1) as requiring "each motor vehicle liability insurance policy to include coverage for *that policy's insured* for bodily injury sustained by that policy's insured, in a motor vehicle accident involving the use of an uninsured motor vehicle." *Johnson v. Nationwide Mutual Insurance Co.,* 388 Md. 82, 89, 878 A.2d 615 (2005) (emphasis added); *see also Mundey v. Erie Insurance Group,* 396 Md. 656, 673, 914 A.2d 1167 (2007) (citing *Johnson, supra,* for the proposition that in section 19–509(c)(1) use of the word "insured," although not defined in the statute, had its ordinary meaning, i.e., "covered or coverage at the time of the accident." [3]). In other words, Maryland's unin-

---

**3.** Counsel for appellee summarizes how courts in our sister states have interpreted statutes that use the term "persons insured" or comparable phrases. He states:

Many state statutes merely refer to "persons insured" or some comparable phrase. *See, e.g.,* Ala.Code § 32–7–23(a); Ariz.Rev.Stat. Ann. § 20–259.01(A); Colo.Rev.Stat. § 10–4–610; Conn. Gen.Stat. § 38a–336(a)(1); Fla. Stat. § 627.727(1); 215 Ill. Comp. Stat. 5/143a; Mont.Code Ann. § 33–23–201(1); Nev.Rev.Stat. Ann. § 690B.020(1); N.H.Rev.Stat. Ann. § 264:15(I). In those states, some courts have concluded that "insured" means each person insured by the terms of the policy. *See, e.g., Johnson v. Hanover Ins. Co.,* 400 Mass. 259, 508 N.E.2d 845, 847 (1987) (holding that " 'persons insured thereunder' ... refers to those persons who are designated within the applicable policy provision as being insured for the purpose of uninsured motorist coverage"); *Chakalos v. Phoenix Ins. Co.,* 110 N.H. 321, 267 A.2d 573, 574 (1970) (holding that 'persons insured thereunder' refers to persons specified in the insurance policy). Other states conclude that

sured motor statute only requires that UM coverage be pro-
vided to persons that are insured under the policy, not third-
parties like Ms. Scott.

What the Court of Appeals said in *Johnson* and *Mundey*,
*both supra*, was foreshadowed by this Court's decision in *Erie
Insurance Exc. v. Reliance Ins. Co.*, 63 Md.App. 612, 493 A.2d
405 (1985). One of the issues presented in the *Reliance* case
was the interpretation of section 541(c)(2) of Article 48A of the
Maryland Annotated Code, which was the predecessor to what
is currently codified as § 19–509(c)(1) of the Insurance Article.
*Id.* at 617, 493 A.2d 405. More specifically, we were called
upon to interpret a statutory provision that read: "in addition
to any other coverage required by this subtitle, every policy of
motor vehicle liability insurance issued, sold, or delivered in
this State ... shall contain coverage, in at least the amount
required under Title 17 of the Transportation Article, for

all persons insured under the liability provisions of the policy must be
insured for UM COVERAGE. *See, e.g., Middlesex Ins. Co. v. Quinn*,
225 Conn. 257, 267, 622 A.2d 572 (1993) (holding that "there is no
violation of public policy if the person being denied uninsured motor-
ist benefits is not an insured under the liability section of the policy");
*Vernon Fire & Casualty Ins. Co. v. American Underwriters, Inc.*, 171
Ind.App. 309, 356 N.E.2d 693, 696 (1976) ("While the statute does
not specifically define "insured" for the purposes of determining who
is allowed to recover under the uninsured provision, it is our inter-
pretation that the legislature intended persons insured under the
liability policy to be those who would recover under the uninsured
motorist coverage."); *Bertini v. State Farm Mut. Auto. Ins. Co.*, 48
Ill.App.3d 851, 6 Ill.Dec. 435, 362 N.E.2d 1355, 1359 (1977) (holding
"that all persons insured under the liability portion of an automobile
liability policy be protected under the Uninsured Motorist Cover-
age."); *Roach v. Central Nat'l Ins. Co.*, 60 Mich.App. 40, 230 N.W.2d
297, 302 (1975) (holding that "uninsured motorist coverage must be
provided to the same persons included as insureds in the liability
policy"); *see also Johnson*, 508 N.E.2d at 848 n. 6 (suggesting that
persons insured under the liability provision, i.e. family members,
must be insured under uninsured provisions). Maryland courts have
not addressed this issue. *Cf. Federal Kemper Ins. Co. v. Schneider*, 58
Md.App. 690, 474 A.2d 224 (1984) (not reaching issue of whether a
person insured for liability must be insured for UM coverage because
it was not raised below). Under either of these approaches, however,
Ms. Scott—a stranger pedestrian—is not an insured, (footnote omit-
ted).

damages which *the insured is entitled to recover from the owner or operator of an uninsured vehicle because of bodily injuries sustained in an accident . . . .*" *Id.* at 617, 493 A.2d 405. Judge Alan Wilner, speaking for this Court, observed that the "most sensible meaning" of the term "insured" was that it meant the person or persons designated as an insured under the policy issued by the insurer. *Id.* at 619, 493 A.2d 405.

Because section 19–509(c) only requires uninsured motorist coverage to be extended to persons "insured" under the policy, Interstate was not statutorily obligated to extend UM coverage to persons who were not insured under the policy, like Ms. Scott or her representatives.

MAIF rejects the above construction and in doing so relies upon section 19–509(f), which reads:

(f) Exclusions.—An insurer may exclude from the uninsured motorist coverage required by this section benefits for:

(1) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs when the named insured or family member is occupying or is struck as a pedestrian by an uninsured motor vehicle that is owned by the named insured or an immediate family member of the named insured who resides in the named insured's household; and

(2) the named insured, a family member of the named insured who resides in the named insured's household, and any other individual who has other applicable motor vehicle insurance for an injury that occurs *when the named insured, family member, or other individual is occupying or is struck as a pedestrian by the insured motor vehicle while the motor vehicle is operated or used by an individual who is excluded from coverage under § 27–609 of this article.*

(Emphasis added.)

MAIF interprets section 19–509(f) as providing:

[W]hen an 'individual . . . is struck as a pedestrian by an insured motor vehicle while the motor vehicle is operated by

an individual who is excluded from coverage under § 27–609—i.e., the exact circumstances of this case—an automobile insurer may deny uninsured motorist coverage to that individual (Ms. Scott) only if (1) the individual is "the named insured or a family member of the named insured who resides in the named insured's household," or (2) the individual "has other applicable motor vehicle insurance."

We reject MAIF's interpretation. Section 19–509(f) deals with who may be excluded from required coverage. Contrary to MAIF's argument, that subsection does not broaden the category of persons to whom UM insurance must be provided in the first place. In other words, MAIF's position fails to take into consideration the difference between determining required coverage and determining the permissible scope of an exclusion from coverage.

MAIF goes to great length to prove that persons similarly situated to Ms. Scott cannot be excluded from coverage but avoids completely the threshold issue of whether there exists a statutory requirement that persons like Ms. Scott be an insured in the first place. In *Johnson v. Nationwide Mutual Insurance Co.*, 388 Md. at 88–89, 878 A.2d 615 (2005), the Court made clear the invalidity of MAIF's position. In *Johnson,* the issue to be decided was whether a deceased relative of an insured qualified for UM benefits even though the deceased relative was not residing with the insured at the time of the accident. Jaydon Johnson, a minor, brought a claim against Nationwide Insurance Company for uninsured motorist coverage. Jaydon claimed that he could recover for the wrongful death of his father against Nationwide even though his father was not an insured under the policy. The policy at issue had an insuring clause similar to the one found in the policy issued by Interstate. Jaydon admitted that the Nationwide policy itself did not afford him coverage. Instead, he argued that Nationwide was required to pay the benefits he sought by virtue of section 19–509(c)(2). The *Johnson* Court pointed out that § 19–509(c)(2) only allowed a surviving relative of *an insured* to recover. Because the decedent was not an "insured" under the terms of the policy, the minor plaintiff

was not a surviving relative of an insured. *Id.* at 88–89, 878 A.2d 615. After stressing that the statute required only that the insurer "include coverage for that policy's insured," the Court went on to say:

> To interpret the statute that way would mean that the legislature was requiring every policy to provide uninsured motorist coverage to an unknown number of people, not named in the policy, who are related to (but not living with) someone who is protected by the policy, in the event that those unknown people should be involved in an accident with an uninsured motor vehicle. *We can only describe this construction of the statute as convoluted.* Our goal in interpreting statutes is to give them their "most reasonable interpretation, in accord with logic and common sense, and to avoid a construction not otherwise evident by the words actually used." We will avoid constructions that are "illogical, unreasonable, or inconsistent with common sense." Moreover, we will not engage in a "forced or subtle interpretation in an attempt to extend or limit the statute's meaning."

*Id.* at 89, 878 A.2d 615 (citations omitted) (emphasis added).

■ As the Legislature undoubtedly was well aware, a basic legal precept concerning insurance coverage is that exclusions do not create coverage. *See Century I Joint Venture v. United States Fidelity and Guaranty Co.,* 63 Md.App. 545, 558, 493 A.2d 370 (1985) ("exclusion clauses do not grant coverage; exclusions limit the scope of coverage granted in the insuring agreement."); *American Home Assurance Co., v. Osbourn,* 47 Md.App. 73, 82, 422 A.2d 8 (1980) ("an exclusionary clause generally cannot be said to create coverage where none existed before.") (quoting 13 Appleman, *Insurance Law and Practice* § 7387 (1976)); *Simkins Industries, Inc. v. Lexington Insurance Co.,* 42 Md.App. 396, 406, 401 A.2d 181 (1979) (language found only in exclusionary clause cannot be reasonably construed as adding additional coverage). *See also Harbor Court Associates v. Kiewit Construction Co.,* 6 F.Supp.2d 449, 458, n. 21 (D.Md.1998) ("It is fundamental that 'exclusion clauses do not grant coverage; exclusions limit the

scope of coverage granted in the insuring agreement.'"); *Reliance Insurance Co., v. Mogavero,* 640 F.Supp. 84, 87 (D.Md.1986) (same). The difference between exclusion from coverage and coverage was also noted in *Mundey, supra,* where the Court pointed out that this "case is not a case of exclusion, rather it is a matter of determining if the Legislature contemplated that Mundey and similarly situated individuals should be covered under the UM statute." 396 Md. at 674, 914 A.2d 1167.

Ms. Scott, because she was not an "insured" under the policy, was not entitled to make a successful UM claim; nor were persons like Ms. Baxter and Ms. Goldsborough, who seek recovery through her.

Lastly, MAIF stresses that the legislative history of the portion of the statute that is now codified as §§ 19–509(f)(2) and 27–609(c)(4) supports its conclusion that a pedestrian, like Ms. Scott, must be provided with UM coverage. The portions of the two statutes relied upon by MAIF had their origins in a 1985 amendment to what was then Article 48A of the Code, covering insurance. *See* 1985 Md. Laws Ch. 698. The legislative review file connected with these amendments shows that the amendments were added in reaction to two cases. One of those cases was *Miller v. Elliott,* a circuit court decision, which was later [after the effective date of the amendments] reversed by the Court of Appeals. *See Nationwide Mutual Ins. Co., v. Miller,* 305 Md. 614, 505 A.2d 1338 (1986). The second case was *Parsons v. Erie Insurance Group,* 569 F.Supp. 572 (D.Md.1983). *See* Committee Report for HB1360 entitled: "Motor Vehicle Insurance–Coverage–Exclusions." According to the sponsor of the amendment, Delegate John C. Astle, the purpose of the amendments was to codify what the courts had decided in the *Parsons* and *Miller* cases. *Id.*

The *Miller* case arose out of an accident in which Michael Rush was driving a Nationwide insured vehicle owned by Michael's wife, Darlene Rush. At the time of the accident Thomas Miller was a passenger in the car driven by Mr. Rush. Although Nationwide insured Darlene Rush's car, the policy

contained an endorsement purporting to void all coverage whenever Mr. Rush drove his wife's car. *Id.* Mr. Miller, the passenger, was injured in the automobile accident and he brought a UM claim against, *inter alia,* Nationwide. The circuit court held that Nationwide owed UM coverage for all damages that Miller (the passenger) could have recovered against the driver (Mr. Rush) to the extent of the UM limits of the policy. 305 Md. at 615, 505 A.2d 1338. Although the Court of Appeals reversed the circuit court's decision in *Miller, id.* at 620, 505 A.2d 1338, it is clear, based on the amendments to the statutes set forth in what is now codified as § 19–509(f) and § 27–609(c)(4), that presently, if he had no UM coverage, a passenger such as Miller could recover under the policy issued by Interstate if he were in the car driven by an excluded driver, because he would be a Clause 2 insured. Moreover, because of the construction Maryland courts give to the word "upon, [as used to define who is a passenger]" some pedestrians who are outside the vehicle at the time of the accident would be covered as well. *See Goodwin v. Lumbermens Mutual Casualty Co.,* 199 Md. at 133, 85 A.2d 759 (allowing UM recovery by a pedestrian standing near the insured vehicle at the time of the accident, but not touching it, because the pedestrian intended to use the vehicle as a passenger or driver).

The *Parsons* case, decided by a federal district court judge, like the *Miller* case, concerned the excluded driver's endorsement to an automobile policy. 569 F.Supp. at 574. Curtis Parsons, an excluded driver under an insurance policy issued by Erie Insurance Group to Mr. Parsons' wife, was killed, and several of his children were severely injured, when the Parsons' vehicle was struck by an uninsured motorist. *Id.* In *Parsons,* the federal court found that both the driver and passenger could recover uninsured motorist benefits from Erie Insurance Group even though the policy insuring the car that the decedent was driving had excluded him as a driver. The common denominator of the *Miller* and *Parsons* cases are that the plaintiffs in those cases were either Clause 1 or Clause 2 insureds in the first place. Neither the *Miller* nor

*Parsons* case stands for the proposition that a party, like Ms. Scott, who was never an insured could recover uninsured motorist benefits.

If the Legislature had intended that UM coverage be extended to stranger/pedestrians injured by the negligence of an excluded driver, the Legislature knew how to say so explicitly. It did exactly that when the Legislature enacted the Personal Injury Protection (PIP) statute and specified who had to be insured in the first place. Section 19–505(a) reads as follows:

Personal injury protection coverage—In general

(a) Coverage required.—Unless waived in accordance with § 19–506 of this subtitle, each insurer that issues, sells, or delivers a motor vehicle liability insurance policy in the State shall provide coverage for the medical, hospital, and disability benefits described in this section for each of the following individuals:

(1) except for individuals specifically excluded under § 27–609 of this article:

(i) the first named insured, and any family member of the first named insured who resides in the first named insured's household, who is injured in any motor vehicle accident, including an accident that involves an uninsured motor vehicle or a motor vehicle the identify of which cannot be ascertained; and

(ii) any other individual who is injured in a motor vehicle accident while using the insured motor vehicle with the express or implied permission of the named insured;

(2) an individual who is injured in a motor vehicle accident while occupying the insured motor vehicle as a guest or passenger; and

(3) an individual who is injured in a motor vehicle accident that involves the insured motor vehicle:

(i) *as a pedestrian; or*

(ii) while in, on, or alighting from a vehicle that is operated by animal or muscular power.

(Emphasis added.)

The uninsured motorist statute, as enacted in Maryland, has no section comparable to section 19–505(a)(3)(i).

In summary, the legislative history surrounding the 1985 amendment indicates that the Legislature was trying to protect personal injury protection and uninsured motorist coverage for certain individuals who were already required to be included in such coverage. Protection was afforded by restricting who could be excluded. The Legislature was not enacting a statute that for the first time required UM coverage for a special class of persons—stranger/pedestrians. To interpret the statute as MAIF asks us to do would mean that the Legislature was requiring every policy to provide UM coverage to an unknown number of people not named in the policy. We reject such a construction, just as the Court of Appeals did in *Johnson.* 388 Md. at 89–90, 878 A.2d 615.

## V.

### Ms. Baxter's Contention

Ms. Baxter argues:

[Interstate's] policy excludes coverage to Stephanie Scott [unless] . . . "such insurance is not available to that other person under another motor vehicle policy." Ms. Scott did not have Uninsured Motorist coverage under another motor vehicle policy. Therefore, the exception to the exception provided Ms. Scott with coverage for her UM claim.

This exception to the exception makes no distinction regarding whether the UM claimant is inside or outside the covered vehicle.

(Citations to Joint Record Extract omitted.)

In support of that argument Ms. Baxter relies on language in the named driver exclusion that we quoted at the beginning of this opinion. We reject Ms. Baxter's argument. As already demonstrated, exclusion provisions do not grant

coverage. Instead, they limit the scope of coverage granted in the insuring agreement.

■ Ms. Baxter's last argument has two parts. In Part I, Ms. Baxter correctly points out:

> [U]nder Section 20–601 of the Insurance Article, Scott would qualify for coverage under the Uninsured Motorist provisions of the Maryland Automobile Insurance Fund because she was injured and the claim arises out of the ownership, maintenance, or use of the motor vehicle in the State of Maryland by a driver who is uninsured and who can be located by service of process.

Part II of her argument is based on section 19–509(e)(1)(i) of the Insurance Article, which requires that the UM coverage provided by a private carrier, like Interstate, "shall be at least equal ... [to] the coverage provided to a qualified person under Title 20, subtitle 6 of this Article." Ms. Baxter argues:

> Ms. Scott would otherwise qualify for a claim against MAIF–UCJ, then Section 19–509 says that the same person would qualify for Uninsured Motorist benefits under any other policy issued in the State of Maryland, policy language.

In the *Erie Ins. Exchange v. Reliance Ins. Co., supra,* 63 Md.App. at 612, 618, 493 A.2d 405 we rejected that exact argument and held that the reference to "qualified person" in § 19–509(e)(1)(i)'s predecessor [48A, § 541(c)(2) ] is a reference to the "amount and scope of coverage required to be afforded to an 'insured' rather than defining who is an 'insured' " under the policy.

## Conclusion

We affirm the circuit court for three reasons. First, Ms. Scott, the decedent, was not insured under Interstate's policy and, therefore, not entitled to "first party" UM coverage. Second, the Legislature only required that UM coverage be extended to an "insured." Maryland precedent teaches that the word "insured," when used in this context, means insured under the policy issued by an insurer. Application of this

precedent is fatal to MAIF"s argument because Ms. Scott was not an "insured" under Interstate's policy. Third, Ms. Baxter's and MAIF's reliance on amendments to the Insurance Article dealing with who can be excluded from UM coverage is misplaced, because the legislative history of those amendments does not indicate that the Legislature intended to broaden the scope of section 19–509(c), the part of the Insurance Article that specifies the person or persons to whom UM coverage must be granted in the first place.

**JUDGMENT AFFIRMED; COSTS TO BE PAID SEVENTY–FIVE (75%) BY THE MARYLAND AUTOMOBILE INSURANCE FUND AND TWENTY–FIVE (25%) BY CONCHITA BAXTER.**